ROWE et al, VS HENDERSON.

Opinion delivered September 23, 1903.

1. *Indian Lands—Unlawful Detainer—Law Governing Proceedings.*
   In an action of unlawful detainer to recover the possession of Indian lands, where the Indian laws are neither pleaded nor proved, the court cannot consider the relations or rights of the parties under such laws, but the law of the forum governs the proceedings.

2. *Indian Lands—Parol Gift—Statute of Frauds.*
   The possessory rights of individual indians in the lands of the nation

are "interests in or concerning lands" within the purview of the statute of frauds (Sec. 3371, Mansf. Dig. 2305, Ind. Ter. Stat.) and such interest can only be transferred by an agreement in writing.

3. *Conveyances—Parol Gift—Equity.*

A transfer of land, by parol gift, can only be taken outside the statute of frauds when established with reasonable certainty; when possession is taken under the gift; and when money is expended upon improvements erected thereon on the faith of the gift.

4. *Unlawful Detainer—Landlord and Tenant—Termination of Relation—Adverse Possession.*

A party in possession of lands as the tenant of another can only plead adverse possession, in unlawful detainer, when the relation of landlord and tenant has been terminated for the required period. And such relation will not be considered terminated by evidence of a parol gift from landlord to tenant, unless the same is sufficient in the three requisites to take such parol gift outside the statute of frauds.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action of unlawful detainer by J. H. Henderson against W. C. Rowe and others. Judgment for plaintiff. Defendants appeal. Affirmed.

This is an action of unlawful detainer, instituted by J. H. Henderson, appellee, on February 20, 1900, for the possession of a tract of land consisting of about 200 acres, fenced and in a state of cultivation, known as the "Bill Rowe Place." Appellee alleged in his complaint that the lands were held and occupied by appellant as the tenant of appellee, and that the time for which said premises were let had expired. On October .17, 1900, Mrs. N. A. Rowe, wife of appellant, was made a party

and on the same day appellants filed their answer, in which they deny the ownership of the plaintiff, or his right to the possession of the lands; deny the rental value; and allege that the lands in controversy were placed in a state of cultivation under one Thomas Graham, the party through whom appellee claims title. and that in the year 1896 Thomas Graham granted, demised, and delivered to Mrs. N. A. Rowe all of his right, title, and interest in and to the lands in controversy, with the exception of about 60 acres. the remaining 40 having been purchased from one Lige Bullard. Appellants further allege that they had been, for three years prior to the filing of the suit, in the peaceable and uninterrupted possession of the land, holding the same as a part of the approximate share of lands to which they were entitled by virtue of their citizenship in the Chickasaw Nation of Indians. Upon the issues mentioned, to wit, the denial of the ownership of the plaintiff, the denial of the relation of landlord and tenant, and the allegation that the gift had been made by Thomas Graham to Mrs. N. A. Rowe, and the question of defendants having held the land adversely for three years previous to the filing of the suit, the case was tried to a jury. The jury was in charge of the case for three days, during which time they were returned into open court, and various charges given, to which appellants duly excepted. On July 25, 1901, the plaintiff having waived his claim for damages, the court peremptorily instructed the jury to find for the plaintiff, to which action of the court the appellants excepted.

*Gilbert & Gilbert*, for appellants. *Furman, Herbert & Mathers, R. D. Wellborn, M. D. Herbert, and C. L. Herbert*, for appellee.

CLAYTON, J. In this case the appellants have failed to file with their brief any specification of errors, as required by rule 10 of this court, 4 Ind. Ter. Rep. p —— (64 S. W. vi), further than to say: "In the discussion of this case we shall direct our attention to two propositions: First. That the only title or the

only property which can be acquired by members of the Choctaw
or Chickasaw tribe or nation of Indians in lands in said nations
is a possessory right, and solely of the nature of a chattel real.
This being true, their interest is such a one as may be transferred
by parol gift. That, if a parol gift of Graham's interest in said
land, which was simply a right to the occupancy, was made by
him to appellants (and this was purely a question of fact for the
jury), that this gift was valid, if accompanied with delivery of
possession, and was a complete defense to an action of unlawful
detainer. Second: That if this gift was not valid under the
law, or was insufficient to divest Graham of the title and vest it
in appellants, it was sufficient to terminate the relation of land-
lord and tenant, and made the appellants' possession adverse
to appellee, and gave him color of title."

Assuming that this is intended as appellants' specification
of errors, it will be observed that the two questions presented
for our consideration are: First. Does the proof of this case
show a legal parol gift of the land in controversy by Thomas
Graham, the plaintiff's grantor, to the defendants? Second.
That if the gift was not valid under the law, or was insufficient
to divest Graham's title, was it not sufficient to terminate the
relation of landlord and tenant as to Graham, and the defendants,
and make the defendants' possession adverse, by reason
of its being color of title? All of the parties to the suit are
Chickasaw or Choctaw Indians, and the land is in the Chickasaw
Nation. The Chickasaw laws, nor any portion of them, are
neither pleaded or proven, and therefore the court below could
not, nor can we, consider them (Wilson vs Owens, 86 Fed. 571,
30 C. C. A. 257); and therefore the law of the forum prevails.
Section 3371 of Mansfield's Digest (Ind. Ter. St. 1899, § 2305),
which is the law of this jurisdiction, provides: "That no action
shall be brought * * * to charge any person upon any con-
tract for sale of lands, tenements or hereditaments, or any

interest in or concerning them unless the agreement, promise or contract upon which such action shall be brought shall be in writing and signed by the party to be charged therewith, or signed by some person by him thereunto properly authorized." Without holding that, as between Indians in the Chickasaw Nation, the statute of frauds is in force by their laws, we do hold, as far as this case is concerned, under the pleadings and proof, it must be so considered. Nor, for the same reason, are we permitted to go to the Chickasaw law to determine the nature of Graham's title, which, it is claimed, was conveyed to the defendant Mrs. Rowe . Under the treaties and the laws of the United States it has been held by the Supreme Court of the United States in Stephens vs Cherokee Nation, 174 U. S. 445, 19 Sup. Ct. 722, 43 L. Ed. 1041, that in all of these Indian nations the title is in the nations, which hold it as trustees for the benefit of the individual Indian, and it is not held as a tenancy in common by the individual Indian occupants. They are simply the cestuis que trustent. But, while this is true, they certainly have the right to possess and occupy individually such tracts of land as they may be permitted by the trustee to hold. The very purpose of the treaties and the legislation of Congress in relation to this matter was to procure homes for them upon which they could live and exercise their rights as citizens of the Chickasaw Nation. It was never intended that the nation should hold the fee, and that the individual Indian should have no right of possession. They have the right of possession of the tract on which they may live. Whether they may sell this possession to other Indians would depend upon the Chickasaw laws, but not being pleaded, we may not consider them. But the complaint alleges that the plaintiff is the owner, and that he deraigns title from Graham; and the answer admits that Graham, at the time of the alleged transfer to Mrs. Rowe, was so far the owner that he could convey the lands. The de-defendants' title depends upon this conveyance. It being ad-

mitted that Graham had such a title, does the conveyance of it by parol fall within the statute of frauds? It is contended by the appellants that this was a mere possessory title, and therefore it was only a chattel real, and therefore the contract of sale is not to be governed by the statute of frauds relating to the conveyance of realty. This we cannot concede. The statute nowhere uses the words "title" or "realty", but its language is, "No action shall be brought to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them." This possessory title of the individual Indian is surely an interest in, or at least concerning lands, and whether or not it be real estate, or merely a chattel real, is not material. The alleged contract falls within the statute, and is void, unless there was something connected with the transfer which took it out of its operation. The alleged transfer of the land was a gift orally made by Graham to the defendant Mrs. Rowe at a time before the termination of the lease executed by Graham to her husband, the other defendant, and while they were in possession of the land under the lease. That a gift of land, resting in parol, will be upheld under certain circumstances, is not doubted. But to sustain such a conveyance three things must appear: Firts, the gift must be proved with reasonable certainty; second, possession of the land must have been taken under the gift; and, third, that the donee actually expended money on the premises by way of improvements under and on the faith of the gift must also be proven. Beach, in his Modern Law of Contracts, 701, says: "Equity will protect a parol gift of land equally with a parol agreement to sell it, if accompanied by possession, and the donee induced by the promise to give it has made valuable improvements on the property. But possession taken in pursuance of a verbal gift is not alone sufficient part performance, there being no valuable consideration, and possession in such a case not being inconsistent with permission simply to occupy the land. Besides

such possession, there must be improvements not capable of compensation in damages. Nor do improvements tend directly to establish the principal fact, and, where the improvements are merely such as are essential to the use of the land, they have but little weight as corroborative evidence. If the expenditure has been trivial, or does not appear to have been induced by or founded upon the gift, or has been compensated for by the past profits of the land, or admits of an adequate compensation from other sources, it will not be sufficient. The gift must be proved clearly and distinctly, and the proof that the donee actually expended money under and on the faith of it must be of equal clearness." "Equity protects a parol gift of land, if accompanied by possession, and if the donee has made valuable improvements on the property." Neale vs Neale, 9 Wall. 1, 19 L. Ed. 590; Mackall vs Mackall, 135 U. S. 167, 10 Sup. Ct. 705, 34 L. Ed. 84. The proof of the gift depended very largely on the testimony of Mrs. Rowe. Her testimony on that point was as follows: "The first time he gave it to me was when he thrashed at our house, one night after supper. We ate supper under the arbor, and all of us sitting out there, and the conversation came up; but it's been so long I don't remember how it started. Anyway, he told me I could have the place when I got my right established; and then, after I got my right established, I was at his house, and he had just got his right established, and we was all in court along about the same time, and when I went in it seemed as though he was rejoicing because I had my right established, and he said: 'What a grand thing Bill Rowe has.' And his wife said, 'How?' And he said, 'Look at the kids he has got. Look at the land he is going to get.' And he says, 'Bill Rowe's got a fortune before him.' I said, 'Tom, I am going to hold down the place I am on,' and he said, 'All right, Mrs. Rowe, you are welcome to the place;' but he says, 'My God, what do you want with that sandy place? I'd go down here, and get me a valley place.' He says, 'I have got a good farm,

but you are going to see me turn it loose and get me a valley place.' * * * He said whenever I got my right established I could have the place, and then he said, after I did get my right established, I was welcome to it." And these are the only declarations ever made, or words of contract ever used, by Graham to Mrs. Rowe in relation to the gift. He (Graham) denies that this conversation was had, or the gift made. There is testimony to the effect that afterwards Graham on several occasions had said that he had "turned the land loose." Several witnesses testify that he had said to them that he was going to let Rowes keep the place, or had turned it over to them. There was some testimony that Graham had tried to get a few acres of the land back from the Rowes for the purpose of setting his fence on the line, but whether it was to get the land from under the lease or gift does not appear. All of this was denied by Graham. Rowe testified that Graham had never informed him of the fact that he had given the place to his wife. This is about the substance of the testimony as to the gift, and we do not think that it clearly establishes that fact.

As to the possession of the land by the defendants under the gift, it is the law that 'a tenant may, during the term of his tenancy, enter into a contract to purchase the land, and the relation between himself and his landlord will thereupon change from that of landlord and tenant to vendor and vendee. Thus when a lessor gives to the lessee an option to purchase, and the lessee exercises his option, he is no longer a tenant, but a vendee." Amer. & Eng. Enc. Law (2d Ed.) vol. 18, p. 167. But, when the contract is verbal, before the relation of landlord and tenant is changed to that of vendor and vendee there must be such a part performance of the contract as to take it out of the statute of frauds. Starkey vs Starkey, 136 Ind. 349, 36 N. E. 287. And when that oral conveyance is a gift, as we have seen, that part performance must be the expenditure of money by the donee

on or about the premises conveyed in the way of valuable improvements upon them. It therefore follows that, if there be no performance of these conditions, the possession remains under the lease. In this case there is not a scintilla of evidence that either of the defendants put any improvements on the place, or expended a dollar upon or about it; and therefore the relation of landlord and tenant, as between them and their landlord, had not been changed by virtue of the gift. Their possession is under the lease. They do not hold by virtue of the gift, either actually or by color. When the lease expired by its terms, they held as tenants at will, and at no time prior to the demand to quit which was served upon them at the bringing of this suit did they hold adversely to their landlord. The proof of the gift having failed, and no showing of such an adverse holding of the premises by the defendants would sustain their claim by virtue of the statute of limitations having been made, the case is clearly for the plaintiff.

As there was no proof to sustain the material averments of the answer absolutely necessary to be proven by the defendants to defeat the plaintiff's action, the court did not err in peremptorily instructing the jury to find their verdict for the plaintiff.

The judgment of the court below is affirmed.

GILL, C. J., and RAYMOND, J., concur.