## LEVY v. YARBROUGH *et al.*

No. 3279.    Opinion Filed November 25, 1913.

(136 Pac. 1120.)

1.    **BROKERS—Authority of Broker—Contract of Sale.** The mere listing of real estate with a broker for the purpose of procuring a purchaser thereof acceptable to the owner does not constitute authority in such broker to bind the owner by an executory contract of sale.

2.    **SAME.** Before a real estate broker can bind the owner by an executory contract of sale, he must have specific authority so to do from the owner.

3.    **FRAUDS, STATUTE OF—Parol Agreement—Right to Enforce.** A parol agreement for the sale of lands will be enforced by the courts where the vendee has paid the purchase price, and taken possession, in good faith, of the premises with the knowledge and consent of the owner, and has made permanent improvements thereon.

    (a)    But the mere acceptance of the purchase price under an oral contract is not of itself sufficient to take the sale out of the statute of frauds.

    (b)    Nor will the fact that the owner orders an abstract of the property to be made take such case out of the statute.

(Syllabus by Brewer, C.)

*Error from Superior Court, Oklahoma County;*
*Edward D. Oldfield, Judge.*

Action by I. B. Levy against R. S. Yarbrough and others. Judgment for defendants, and plaintiff brings error.    Affirmed.

*G. A. Paul,* for plaintiff in error.

*John H. Wright* and *Clarence J. Blinn,* for defendants in error.

Opinion by BREWER, C.    This suit is in the alternative for either a specific performance of a contract for the sale of certain lots, or for damages for failure to comply with such contract.    The plaintiff in error, who was plaintiff in the trial court, and will be hereafter so designated, claims that he made a contract with a real estate firm for the purchase of certain lots upon

certain terms, and that such contract was binding upon the defendants, and that it was their duty under the law to fulfill the same by a conveyance of the property.  Plaintiff's first petition, filed June 15, 1909, asserted that the authority from the defendants to the real estate agents to sell the property was verbal.  A demurrer was sustained.  An amended petition filed July 24, 1909, did not materially change the averments of the first one, and, being attacked by demurrer, met the same fate.  The second amended petition, filed March 15, 1910, alleged that the defendants had authorized the real estate firm in writing to sell the land, but that defendants "neglected and forgot to place their signatures to * * * written agreement," etc.  This petition was held insufficient, and on February 21, 1911, the plaintiff filed what he terms a supplemental petition, and this one was also held on May 13, 1911, to be insufficient as against a demurrer.  The plaintiff, refusing to plead further, brings the case here; the sole point involved being the sufficiency of the allegations of the plea to support the action.

The petition involved here avers, in substance, merely that the defendants listed their property with the real estate agents by a personal application therefor, and stood by and saw the agents write out a listing card, upon which the agents placed their names, the property to be sold, and the amount of price wanted, and that this constituted an authority in writing in the real estate agents, and that thereafter the plaintiff made a written offer to buy the property from said agents, describing it, together with the consideration and the terms of payment, and that the said agents accepted said offer and signed the same at the bottom thereof.  In describing the authority of the agents under the listing aforesaid, the plaintiff says:

"That on and before the said 5th day of June, 1909, the said defendants, being desirous of selling said real estate, listed the same with one G. B. Stone Realty Co., of Oklahoma City, Okla., for the purpose of procuring a purchaser therefor, and by such listing the said defendants directed and authorized the said Stone Realty Company to act in the capacity of agent for the sale of said real estate at the price of $7,875, upon such terms as suited the defendants."

The plaintiff further alleged a ratification by the defendants of the contract of sale made with the agents. Without discussing in detail the allegation that the authority given the agents was in writing, we think it sufficient to say that the authority of the agents as alleged, even had it been in writing, was not sufficient authority in the agents to make for the defendants a binding contract of sale of the lots. The giving of an agent the authority to handle real estate, and to procure a purchaser for the same, falls far short, in our judgment, of authorizing such agent to make a binding contract of sale himself.

It will be observed that the averment says: That defendants listed the lots with the agent *"for the purpose of procuring a purchaser therefor"* to act as agent for defendants in the sale of the lots *"upon such terms as suited the defendants."* In our judgment the allegations of the petition show no authority in the agent further than to procure a purchaser acceptable to the owners.

This question was before the territorial Supreme Court in case of *Gault Lumber Co. v. Pyles et al.,* 19 Okla. 445, 92 Pac. 175, and in the body of the opinion, written for the court by Chief Justice Burford, it is said:

"Nor do we think there was shown such a written authority of the agent to sell as will take the case out of the statute of frauds. An authority of an agent to sell real estate, in order to bind the owner by executory contract, must be specific and certain as to terms and description. Ordinarily, when property is placed in the hands of an agent to sell, the authority conferred is only held to be the authority to find a purchaser at a given price and submit the same to the owner, and not an authority to sell and bind the owner."

And in the case of *Weatherhead v. Bittinger,* 78 Ohio St. 104, 84 N. E. 598, 17 L. R. A. (N. S.) 210, it is said by the Supreme Court of Ohio:

"A real estate broker is without authority to execute a contract of sale which shall be binding upon one who places real estate in his hands for sale unless such authority is specially conferred."

This Ohio case is reported in 17 L. R. A. (N. S.) 210, and the editor has appended thereto a very valuable note, practically

covering this question, and in which a great number of authorities are collected sustaining the text.    See, also, *Carstens v. McReavy,* 1 Wash. 359, 25 Pac. 471; *Armstrong v. Oakley,* 23 Wash. 122, 62 Pac. 499; *Foss Inv. Co. v. Ater,* 49 Wash. 446, 95 Pac. 1017; *Hardinger v. Columbia,* 50 Wash. 405, 97 Pac. 445; *Hutchins v. Wertheimer,* 51 Wash. 539, 99 Pac. 577; *Lawson v. King,* 56 Wash. 15, 104 Pac. 1118.

2.    The petition does not aver facts sufficient to constitute a ratification so as to take the case out of the statute of frauds. It is averred that defendants accepted the earnest money; that they orally agreed to the unauthorized sale made by the agents; that they procured an abstract of the title to be brought down to date, etc.    The courts will enforce a parol agreement for the sale of lands, where the vendee has paid the purchase price, and taken possession, in good faith, of the premises, with the knowledge and consent of the owner, and has made permanent improvements thereon.    *Harris et ux. v. Arthur,* 36 Okla. 33, 127 Pac. 695; *Sutherland v. Taintor,* 17 Okla. 427, 87 Pac. 900.    But the mere acceptance of the purchase price is not of itself sufficient.    *Halsell v. Renfrow,* 14 Okla. 674, 78 Pac. 118, 2 Ann. Cas. 286; *Rowe v. Henderson,* 4 Ind. T. 597, 76 S. W. 250; *Givens v. Culder,* 2 Desaus. (S. C.) 172, 2 Am. Dec. 686; *Cooper v. Thomason,* 30 Ore. 161, 45 Pac. 296; *Goddard v. Donaha,* 42 Kan. 754, 22 Pac. 708; 20 Cyc. 297, and note 23.

Our statute of frauds, as indeed is the statute of most of the states, is substantially the same as that of England, and, while the English chancery courts, at an early period, created many exceptions to the statute, some of which have been followed by the American courts, yet these exceptional cases, taken out of the operation of the statute, are usually based on facts which show that the party invoking the statute, designed to prevent frauds, is in fact using the same to perpetrate one.

The Alabama Supreme Court, speaking through Justice Taylor (*Allen v. Booker,* 2 Stew. 21, 19 Am. Dec. 34), discusses this subject, and quotes from the great Chief Justice Marshall as follows:

"In the United States, the cases uniformly show that the courts are rather inclined to restrict than to enlarge the cases of exception to the strict execution of the statute. In the case of *Grant v. Naylor,* 4 Cranch, 235, that distinguished judge, Chief Justice Marshall, observes: 'Already have so many cases been taken out of the statute of frauds which seem to be within its letter that it may well be doubted whether the exceptions do not let in many of the mischiefs against which the rule was intended to guard. The best judges in England have been of opinion that this relaxing construction of the statute ought not to be extended further than it has already been carried, and the court entirely concurs in that opinion.' "

Nor are the facts that the owners ordered the abstract brought down to date, and made oral statements that they would make the sale, sufficient to ratify an unenforceable contract in regard to the sale of lands. *Harris et ux. v. Arthur,* 36 Okla. 33, 127 Pac. 695; *Givens v. Calder,* 2 Desaus. (S. C.) 172, 2 Am. Dec. 686; *Parrish v. Koons,* 1 Pars. Eq. Cas. (Pa.) 78; *Hutchins v. Wertheimer,* 51 Wash. 539, 99 Pac. 577; *Cooper v. Thomason,* 30 Ore. 161, 45 Pac. 296; *Halsell v. Renfrow, supra; Kesner v. Miesch,* 204 Ill. 320, 68 N. E. 405; *Kozel v. Dearlove,* 144 Ill. 23, 32 N. E. 542, 36 Am. St. Rep. 416; *Roth v. Goerger et al.,* 118 Mo. 556, 24 S. W. 176.

The case should be affirmed.

By the Court: It is so ordered.