## WOODWORTH et al. v. FRANKLIN.

No. 11294—Opinion Filed Sept. 20, 1921.

Rehearing Denied Feb. 7, 1922.

### (Syllabus.)

**1. Frauds, Statute of—Validity of Oil Lease.**

An oil and gas mining lease, commonly known as "unless lease," which provides that it shall remain in force for a term of five years from its date, and as long thereafter as oil or gas, or either of them, is produced from the land by the lessee, and which contains the clause that if no well be commenced on said land on or before the expiration of one year from the date of said lease, the same shall terminate as to both parties, unless the lessee, on or before that date shall pay, or tender to the lessor, a specific sum of money, which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date, etc., is a lease of land for a period of five years, and under the provisions of the fifth subdivision of section 941, Rev. Laws 1910, is invalid unless in writing.

**2. Same—Assignment of Lease—Necessity for Writing.**

Under the statute of frauds of this state, all contracts for the leasing of real estate for a longer period than one year are invalid unless the same, or some note or memorandum thereof, be in writing, and an assignment of such a lease, to be valid, must also be in writing.

**3. Same — Executory Contract for Sale of Lease.**

An executory contract for the sale of an oil and gas mining lease for a term of five years is invalid unless such contract, or some note or memorandum thereof, be in writing. and subscribed by the party to be charged, or by his agent.

**4. Same—Contract by Agent—Necessity for Agent's Authority in Writing.**

A contract for the sale of an oil and gas lease entered into by an alleged agent of the owner of such lease and a third person is invalid, under the statute of frauds. unless the authority of such agent to sell said lease be in writing, subscribed by such owner, and such authority must be specific and certain as to the authority conferred, the terms, description, and parties. so that such authority is disclosed by the writing itself. and recourse to parol evidence to show the intention of the parties is unnecessary.

**5. Same—Statute Relating to Real Estate Contracts.**

Subdivision 1, statute of frauds (section 941, Rev. Laws 1910), applies alone to agreements other than those relating to land, and subdivision 5 of said section governs with reference to agreements concerning real estate.

**6. Same—Sale of Land or Oil Lease—Validity of Parol Agreement—Effect of Payment, Possession, and Making Improvements.**

A parol agreement for the sale of lands, or of an oil and gas lease thereon, will be enforced by the courts where the vendee has paid the purchase price, and taken possession, in good faith. of the premises with the knowledge and consent of the owner and made permanent improvements or development thereon.

**7. Same—Effect of Possession Where Lease Owner Disapproved Contract of Unauthorized Agent.**

The acts of taking possession of land covered by oil and gas mining leases, after the owner of such leases has disapproved a contract for the sale of such leases made by an unauthorized agent, are without warrant, and will not take the contract out of the statute of frauds, and possession under a contract of sale with an agent. invalid because the authority of the agent was not in writing. and with knowledge that the owner denied the contract, and refused to assign said leases, is of no avail as an act of part performance.

**8. Same — Right of Purchaser of Lease to Specific Performance.**

Specific performance of a contract of sale of oil and gas mining leases made by an alleged agent whose authority was not in writing. and therefore invalid, will not be enforced against the owner of said leases, by one who has paid no part of the consideration, and who went into possession without the consent of the owner, and after he had been notified by such owner that he denied the authority of such alleged agent. and after such owner had sold and assigned such leases to a third party.

Error from District Court, Carter County; John L. Coffman. Assigned Judge.

Action by Wirt Franklin against W. W. Woodworth, John Heenan, B. A. Simpson, and C. L. Anderson for specific performance of contract to sell oil leases. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Geo. S. Ramsey, Robt. M. Rainey, Cruce & Potter, R. A. Hefner, Edgar A. de Meules, Malcolm E. Rosser, and Villard Martin, for plaintiffs in error.

H. A. Ledbetter and Johnson & McGill, for defendant in error.

NICHOLSON. J. This action was instituted in the district court of Carter county by the defendant in error, as plaintiff, against the plaintiffs in error, as defendants, seeking the specific performance of a contract of sale of two oil and gas mining leases covering certain lands in Carter county.

On June 7. 1919. the plaintiff. Franklin, filed in the trial court his petition herein, in which it is alleged that the defendant Woodworth was the legal and equitable owner and holder of two certain oil and gas leases covering 30 acres of land in Carter county. which leases had been executed to said Woodworth by L. H. Thompson and wife, one of said leases bearing date February 5, 1917, and the other bearing date February 13; 1917; that said Woodworth verbally designated L. D. Evans and E. E. Evans as his agents to sell said leases. It is further alleged that said Woodworth delivered said leases, together with the abstract of titles to said land. to his said agents with authority to sell said leases, and at the time of the delivery thereof said Woodworth executed and delivered to said agents a memorandum in writing (to which we will hereafter refer). It is further alleged that said Woodworth verbally authorized his agents to go into possession of the land covered by said leases for exploration purposes and for other purposes conferred upon the lessee by said leases; that

said agents, acting for and on behalf of said Woodworth, sold said leases for the consideration of $12,000 to said plaintiff, Franklin; that after the purchase of said leases by him, he immediately went into possession of said lands for exploration purposes and began the erection of a derrick thereon, and began the actual drilling of a well. It is further alleged that said Franklin tendered to the defendant Woodworth the purchase price of said leases, but that said Woodworth failed and refused to accept the same, and failed and refused to carry out the sale so made by his said agents, the reason therefor being that the said Woodworth was offered a larger sum of money by the defendant John Heenan, which larger offer was made after the sale by the said agents to said Franklin, and that the offer made by said Heenan to said Woodworth was with actual and constructive notice of the existence of the sale of said leases by said agents to said Franklin, and with actual notice that said Franklin was in possession of said oil and gas leases, and after he had entered possession of said land for the purposes stated in said leases. The plaintiff, in said petition, then offered to do equity, and tendered into court the consideration of $12,000.

It is further alleged that Woodworth executed an assignment of said leases to John Heenan, and thereafter John Heenan assigned an undivided one-half interest therein to one B. A. Simpson, and that Simpson assigned to Anderson & Simpson, a special partnership, all the interest he acquired by the assignment of Heenan to him, and that both B. A. Simpson and Anderson & Simpson had both actual and constructive notice of the rights of said Franklin. It is alleged that the plaintiff, Franklin, has the equitable title to said oil and gas leases, with all the rights and privileges conferred upon said Woodworth in said original leases, and is entitled to have said equitable title merged into a legal one; and he prayed for specific performance of his contract against the defendant Woodworth, and for judgment declaring Woodworth to hold the legal title in trust for him, and that the assignment from Woodworth to Heenan and from Heenan to Simpson, and from Simpson to Anderson & Simpson, be cancelled as clouds upon his right of exploration, and for such other and further relief to which he might be entitled, both legal and equitable.

The defendants John Heenan, B. A. Simpson, and C. L. Anderson filed a verified answer, in which they denied all the allegations in said petition contained, except such as were specifically admitted, and specifically denied that the said E. E. Evans and L. D. Evans had any authority to make any contract for the sale of said leases, and further pleaded that on June 3, 1919, the defendant W. W. Woodworth, for a consideration of $15,000 cash, did sell, assign, and deliver to the defendant John Heenan said leases, and that said John Heenan did, on June 5, 1919, sell and assign an undivided one-half interest in and to said leases to said B. A. Simpson, and that B. A. Simpson assigned the same to said Anderson & Simpson; that on the evening of June 3, 1919, the defendant John Heenan informed said plaintiff, Franklin, that he had purchased said leases, and on the 9th day of June, 1919, he served a written notice on said Franklin notifying him not to go upon said land or attempt to develop the same; that Franklin knew he never had any valid claim to said leases, any right to go upon said land, or any lawful contract; and that on the 3rd day of June, 1919, the defendant Woodworth notified Franklin that he had not authorized E. E. Evans or L. D. Evans to sell said leases to him, but that he had already sold the same to the defendant John Heenan, and thereafter, Franklin, without authority, right, or permission from anyone interested in either the land or the leases, forcibly and unlawfully went upon said property, and "jumped said leases," and is attempting to develop said property; that said Franklin is a trespasser upon said premises, and with no greater rights or privileges than any naked trespasser would have upon said premises; that said plaintiff has no right to any improvements he should make upon said property, or to any oil he might produce or abstract from said property, but that the defendants are entitled to seven-eighths of all oil produced therefrom, and in the event plaintiff should produce and sell oil from said premises, said defendants are entitled to be paid for same at the highest market price paid for similar oil in that community, at any time before the trial of said cause; and further pleaded the statute of frauds in bar to plaintiff's suit, and prayed that the contract between said plaintiff and E. E. Evans be canceled and removed as a cloud upon the title; that the plaintiff be adjudged to have taken possession in bad faith, and as a trespasser,

and that all improvements placed upon said property by him be declared to be the property of the defendants, and for judgment for seven-eighths of all oil produced from said land, and in the event there was no oil produced, that they have judgment against said plaintiff for the sum of $100,000, damages, and for such other relief, both legal and equitable, to which they might be entitled.

The defendant W. W. Woodworth filed a verified answer consisting of a general denial, and a specific denial of the authority of E. E. Evans and L. D. Evans, or either of them, to act for him as his agents, and averred that he sold said leases to John Heenan and received payment therefor, and that he had full authority to do so; and further averred that the contract between E. E. Evans and Franklin was of no effect, and was not binding upon him.

In reply, plaintiff pleads a general denial, and that the statute of frauds does not apply, for the reason that there has been a partial performance of said contract, and that said oil and gas leases and the delivery thereof to said plaintiff only gave him the right of exploration; that no part of the realty was thereby transferred or delivered, or intended to be transferred or delivered, but the rights and privileges therein granted to the lessee in said oil and gas leases were and are personal property; and, further, that the delivery of said oil and gas leases to said plaintiff constituted in law an equitable assignment thereof, and plaintiff's entry thereunder was acquiesced in by the defendant Woodworth.

The trial court found generally for the plaintiff, Franklin, and granted him the relief sought, and in discussing the facts we will resolve in favor of the plaintiff any conflict in the evidence, and will consider the evidence of the defendants only where there is no conflict.

It appears from the evidence in behalf of the plaintiff that E. E. Evans and L. D. Evans were partners and were lease brokers; that on the 2nd day of June, 1919, they met the defendant W. W. Woodworth about three and one-half miles west of Wilson, Oklahoma; that Woodworth told them there that he wanted to sell his land; that he started to give them a list thereof, and that E. E. Evans handed him a little plat book, and Woodworth marked the land out in it and told them to go ahead and sell it, and make some money

out of it; that Woodworth described the 30 acres in controversy by marking it on the plat contained in the plat book, and stated that the lease would terminate in about two and one-half years; that he wanted $300 an acre, and signed the plat book "W3", which was his usual signature to instruments of this character. Neither E. E. Evans nor L. D. Evans saw Woodworth again until about 10 or 11 o'clock on June 3, 1919, when E. E. Evans had met him on the streets of Wilson and told him of a trade he had up with one Roy Carmicheal the night before. E. E. Evans and Woodworth went up the street to where L. D. Evans was, and L. D. told Woodworth that he thought he could get $400 per acre for the leases. Woodworth replied that he would take $400 per acre if they could sell the leases for that amount that day, and at that time delivered the original leases and abstracts of title covering the land to L. D. Evans. E. E. and L. D. Evans went to Ardmore, and E. E. Evans called upon Franklin at his office in Ardmore, and submitted the matter of the sale of said leases to him, and the plaintiff agreed to purchase the same for the sum of $400 per acre, whereupon E. E. Evans asked the plaintiff for a contract, and the plaintiff prepared a contract, which was executed by him and was also signed by E. E. Evans, and reads as follows:

"Memorandum of Agreement.

"This contract made this 3rd day of June, 1919, between W. W. Woodworth by and through his duly appointed and constituted agent, E. E. Evans, party of the first part, and Wirt Franklin, party of the second part, witnesseth:

"That the party of the first part has sold and agrees to deliver to the party of the second part an oil and gas lease covering the following described land situated in Carter county, Oklahoma, to wit: The northwest quarter (N.W.¼) of the northeast quarter (N.E.¼) of the southeast quarter (S.E.¼) and the north half (N.½) of the northwest quarter (N.W.¼) of the southeast quarter (S.E.¼) of section twenty-one (21) township 4 south, range 2 west, containing 30 acres, the agreed purchase price of which is twelve thousand ($12,000.00) dollars, and the party of the second part agrees to pay to the party of the first part upon the delivery to him of good and sufficient assignment of the leases covering said land and abstract of title showing party of the first part to be the owner of good and valid oil and gas leases covering the same, the said sum of twelve thousand ($12,000.00) dollars.

"Witness our hands this the day and year first above written.

"E.E. Evans,

"Party of the First Part.

"Wirt Franklin,

"Party of the Second Part.

"State of Oklahoma,

"County of Carter, SS.

"Before me, A. P. Colvin, a notary public in and for said county and state, on this 4th day of June, 1919, personally appeared Wirt Franklin, to me known to be the identical person who executed the within and foregoing instrument, and acknowledged to me that they executed the same as their free and voluntary act and deed for the uses and purposes therein set forth.

"A. P. Colvin,

"Notary Public.

"My commission expires Feby. 17, 1923.

"Seal."

This contract was executed between 3 and 4 o'clock on June 3, 1919, and the original leases and the abstracts were by E. E. Evans delivered to the plaintiff; the plaintiff prepared assignments of said leases and E. E. and L. D. Evans took said assignments to Wilson for the purpose of having the same executed by Woodworth. They did not find Woodworth at Wilson, but, learning that he had gone to Ardmore, they returned and found Woodworth in the Randol hotel; they told him that they had sold the leases, and he replied that he had sold them first; that he had sold the property for $500 an acre to the defendant John Heenan, and refused to execute the assignments to Franklin. E. E. Evans asked Woodworth to go with him to Franklin to get the leases and abstracts, but Woodworth refused to do so. On the morning of June 4, about 9 o'clock, E. E. Evans went to Franklin and asked for the leases and abstracts, but Franklin refused to return them, stating that he was going to fight for the leases because he felt he was entitled to them; that he risked $12,000 against a dry hole, and that if the well had been dry he would feel himself bound on the contract. On cross-examination, the witness E. E. Evans was asked the following question: "Q. Mr. Franklin didn't pay you the $12,000?" To which he answered: "No, sir; I wasn't authorized to receive any $12,000."

It further appears that Frank Head, the assistant of Franklin, called Franklin about 9 o'clock on the evening of June 3rd, and told him that there might be some trouble over getting delivery of the assignments, and that the next morning Franklin acknowledged the contract which had been prepared the day before, and filed it for record, and that he learned on the morning of June 4th that Heenan had agreed to buy the leases, but that there was nothing on record at that time; that his contract was recorded before Heenan's contract was executed; that Mr. Potter, one of the attorneys for Heenan, requested Mr. Hefner to obtain the abstracts from Franklin in order that he, Potter, might examine the same for Heenan, and that Franklin delivered the abstracts to Hefner with the understanding that they would be returned to him. On the day following that on which he purchased the leases from Evans, Franklin met Woodworth at the Texas well No. 1, in section 27, and Franklin testified to the following conversation in regard to these leases:

"Mr. Woodworth said he hoped there wouldn't be any trouble, and I said I hoped there wouldn't be any either, that I bought it first and intended holding it and taking possession of it and developing it. He said he wished the matter could be compromised. I said to Mr. Woodworth: 'While I am sure I bought the whole lease, the whole thirty acres, I want to be fair to everybody concerned, and while I don't offer it as a compromise—I think I have it all under the contract—I believe I would be willing to settle the whole matter and give them half of it.' He said, 'I will call Mr. Heenan and see if he will agree to it.' He called him and he refused to entertain the proposition and walked off and left us standing there. I then told Mr. Woodworth that my proposition was withdrawn and I would take possession of the leases and go ahead."

It appears that Franklin was in Desdemona, Texas, on June 6th, and talked to one Reese Evans, his assistant in the office, over the telephone, and instructed him to go out and make a location on each of said leases and take possession; that the locations were made on the afternoon of June 6th, and some material moved on the ground on the morning of June 7th; that Franklin had instructed Mr. Ledbetter, his attorney, to bring this suit before he left Ardmore for Texas; on June 9th, at about 6 o'clock p. m., Franklin was served with the following notice:

"To Wirt Franklin,

"Ardmore, Okla.

"This is to notify you that we are the owners of an oil and gas mining lease covering the following described land, situated in Carter county, Oklahoma, to wit: The northwest quarter of northeast quarter of southeast quarter and north half of northwest quarter of southeast quarter of section twenty-one, township four south. range two west, with the exclusive right to mine, drill for oil or gas on said premises, and that you

and your agents, employes or anyone acting by, through or under you, are hereby notified not to go upon said premises 'for the purpose of mining for oil or gas, or placing any timber, derricks, or other property preparatory to drilling or to drill upon said premises, or to extract any oil or gas therefrom.

"B. A. Simpson,
"J. A. Heenan,
"By Cruce & Potter, Their Attorneys."

That on June 23rd, a well was spudded in on one of said leases, and was duly completed, and is producing about 500 barrels of oil per day; that Franklin had at 'the time of the trial expended the sum of $39,-688.16 in developing said leases.

The defendant John Heenan, called as a witness for the plaintiff, testified that he had no partner, but that he and Mr. Coe owned some leases together; that Mr. Simpson, Mr. Dings, Mr. Sykes, Mr. Coe. and Mr. Hefner were interested with him in the Woodworth leases; that he bought the leases of Woodworth between 5 and 6 o'clock on June 3rd, and gave Woodworth a check for $500 at that time; the assignments were drawn up the next day, June 4th; that E. E. Evans told him the night of June 3rd, after he had purchased the leases from Woodworth, that he, Evans, was selling them to Franklin, but Evans did not say that he had made a contract with Franklin, neither did he hear Evans tell Coe that he had sold the leases to Franklin.

The defendant Woodworth testified that he did not remember whether Heenan paid for the leases before or after this suit was filed, but he "anticipated" that the suit had been filed before he received the money.

Counsel for plaintiffs in error present various grounds for reversal, and in very able and exhaustive briefs argue the propositions presented from every angle; but, after a thorough analysis of the arguments presented by counsel for both plaintiff and defendants, we conclude that the pertinent inquiries are:

(1) Were E. E. Evans and L. D. Evans authorized by Woodworth to sell said oil and gas leases, or were they merely authorized to procure a purchaser therefor? (2) If they were authorized to sell said leases, was the authority such, under the statute of frauds, as would enable them to bind Woodworth by the contract entered into between E. E. Evans and Franklin? (3) If their authority was such as would enable them to bind Woodworth by said contract, is said contract void as to the defendants

Heenan, Anderson, and Simpson because it was not acknowledged by E. E. Evans, the agent of Woodworth? (4) If the authority of Evans to sell said leases was void under the statute of frauds, because not in writing, and if the contract between E. E. Evans and Franklin is within the statute of frauds, has the same been taken out of the statute by part performance on the part of Franklin?

We will consider the first and second questions together, and while we do not think the evidence shows that E. E. Evans and L. D. Evans were authorized to do more than procure a purchaser of the leases, we will assume for the purpose of this discussion that Woodworth authorized them as his agents to actually sell for him said leases, and proceeding under this assumption, will determine whether such authority was valid under the statute of frauds. Section 941, Rev. Laws, 1910, declares:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged or by his agent"

—and among the contracts designated by the fifth subdivision of said section are these:

"Fifth. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

The two leases involved were executed and delivered to W. W. Woodworth by the owners of the land, one on the 5th and one on the 13th day of February, 1917, and by their terms the land described was granted, demised, leased, and let to him for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and of building tanks and structures thereon to produce, save, and take care of the products, and said leases contain the following stipulations which it is necessary to notice in view of the argument advanced:

"It is agreed that this lease shall remain in force for a term of five (5) years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lease. * * *

"If no well be commenced on said land on or before the 5th day of Feb., 1918, (13th day of Feb., 1918) this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit at the First

State Bank of Ringling, Okla., or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of ten & no/100 dollars ($10.00) dollars which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments or tenders, the commencement of a well may be further deferred for like period of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

The leases are what are commonly known as "unless leases," and it is insisted by counsel for Franklin that the term of each of said leases is conditioned upon the subsequent provision quoted above, providing for the payment of a stipulated amount as rental and to cover the privilege of deferring the commencement of a well for an additional twelve months, and that as the lessee was not bound to pay said rental and upon his failure to do so the leases automatically terminated, therefore the conditions of the leases were such that the terms thereof were not fixed for a definite period beyond one year. In other words, that the leases were in reality for a period of one year with the option on the part of the lessee to renew them from year to year upon payment of rental. And it is further contended that said leases do not create an interest in the lands, and for this reason are not within the statute of frauds.

These questions are novel, have never been passed upon by this court, and we have been unable to find that any other court has ever considered them. If the contention of counsel for defendant in error is correct, it necessarily follows that if all the agreements contained in these leases were in parol, they would nevertheless be valid and enforceable and not within the statute of frauds. By the provisions of the leases above set out, it is specifically provided that "this lease shall remain in force for a term of five years from this date, and as long thereafter as oil and gas or either of them is produced from said land by the lessee." We are unable to see how these leases, which specifically provide that they shall remain in force for a term of five years from their date, and as much longer as oil or gas is produced, can be otherwise construed than meaning just what they say. It is true that if the lessee should fail to commence a well or pay the stipulated rental within one year from the date of the leases, such leases would terminate as to both parties, but if a well was commenced, no rental was required to be paid, and if the rental was paid, the lessee was not required to commence a well. As we view the leases, the proper construction to be placed thereon is that the lessee had the option of terminating them by failure to either commence a well or pay rental within the 12 months specified, but the lessor had no option to terminate the same, and they would remain in force for the full term of five years upon compliance with their terms by the lessee. This option upon the part of the lessee to terminate the lease did not convert the five-year term into a term for but one year. We can see no marked distinction, so far as the statutes of frauds is concerned, between the leases in question and an ordinary agricultural lease for a term of five years, providing for the payment of rental in annual installments, and with the provision that failure to pay rental when due should terminate the lease. There, the failure to pay rent would terminate the lease, but no one has ever suggested that a lease of that character would be valid unless in writing. Here, a failure to either drill or pay rental would terminate the lease. We conclude that the leases under consideration, being for a term of five years, are, under the provisions of section 941, Rev. Laws 1910, required to be in writing.

In Kolachny v. Galbreath et al., 26 Okla. 772, 110 Pac. 902, this court uses the following language:

"The lease relied upon by the plaintiff does not vest in him the title to the oil and gas in said land, and is not a grant of any estate therein, but is simply a grant of a right to prospect for oil and gas, no title vesting until such substances are reduced to possession by extracting same from the earth—an incorporeal hereditament. Payne et al. v. Neuval et al., 155 Cal. 46, 99 Pac. 476; Richlands Oil Co. v. Morriss, 108 Va. 288, 61 S. E. 762; Rawlings et al. v. Armel et al., 70 Kan. 778, 79 Pac. 683; Dickey v. Coffeyville Vitrified Brick & Tile Co., 69 Kan. 106, 76 Pac. 398; Emery v. League et al., 31 Tex. Civ. App. 474, 72 S. W. 603; Detlor et al. v. Holland, 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A. 266; Wagner et al. v. Mallory et al., 169 N. Y. 501, 62 N. E. 584; Kelly v. Keys et al; 213 Pa. 295, 62 Atl. 911, 110 Am. St. Rep. 547; Toothman v. Courtney, 62 W. Va. 169, 58 S. E. 915; Carter v. County Court, 45 W. Va. 806, 32 S. E. 216, 43 L. R. A. 725; Thornton on Oil & Gas, secs, 51-53.

"Ejectment will not lie to recover possession of the land covered by such lease

against the lessor or his grantee when the lessee has never had possession under said lease (Kelly v. Keys, supra; Petroleum Co. v. Coal & Coke Mfg. Co., 89 Tenn. 381, 18 S. W. 65; Heller v. Dailey, 28 Ind. App. 555, 63 N. W. 490; Gillispie v. Fulton Oil & Ga Co., 235 Ill. 188, 86 N. E. 219), though ejectment will as a rule under our statute lie to recover land held for a term of years (Section 6122, Comp. Laws 1909, section 4492 St. 1893; Hurst v. Sawyer, 2 Okla. 473, 37 Pac. 817)."

And this case, in so far as the holding above quoted is concerned, has been cited with approval in Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okla. 719, 119 Pac. 260; Duff v. Keaton, 33 Okla. 92, 124 Pac. 291; In Re Indian Territory Illuminating Oil Co., 43 Okla. 307, 142 Pac. 997; Hill Oil & Gas Co. v. White, 53 Okla. 748, 157 Pac. 710; Warner v. Page, 59 Okla. 259, 159 Pac. 264; Kelly v. Harris, 62 Okla. 236, 162 Pac. 219; Barker v. Campbell-Ratliff Land Co., 64 Okla. 249, 167 Pac. 468; Rich v. Doneghey, 71 Oklahoma, 177 Pac. 86; State v. Welch, 16 Okla. Cr. 485, 184 Pac. 786; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 Pac. 514; but the questions presented in the case at bar were not involved in any of these cases. However, it is held in these cases that the right granted by an oil and gas lease is an incorporeal hereditament. By section 4642, Rev. Laws 1910, it is provided that "the common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma," and under the common law an incorporeal hereditament could only be created or transferred by grant. Jones' Blackstone, book 2, sec. 434, ch. 20; Washburn on Real Property, vol. 3, sec. 2233; Browne on The Statute of Frauds, secs. 2-5; Heller v. Dailey et al. (Ind.) 63 N. E. 490; Girard v. Lehigh Stone Co. (Ill.) 117 N. E. 698; R. C. L. vol. 9, page 746. By section 1153, Rev. Laws 1910, it is provided:

"The words 'land,' 'real estate' and 'premises,' when used herein or in any instrument relating to real property, are synonyms and shall be deemed to mean the same thing, and, unless otherwise qualified, to include lands, tenements and hereditaments; and the word 'appurtenances' unless otherwise qualified shall mean all improvements and every right of whatever character pertaining to the premises described."

And by section 2945, Rev. Laws 1910, it is declared that "the words 'real property' are coextensive with lands, tenements and hereditaments." Therefore, if an oil and gas lease creates an incorporeal hereditament, it must be in writing. So, whether the leases under consideration are valid grants of incorporeal hereditaments, or are leases for a term longer than one year, or whether they create an interest in real estate, they are, under statute of frauds, required to be in writing.

Having determined that the leases were required to be in writing, it follows that the assignments thereof were also required to be in writing. Tyler Commercial College v. Stapleton, 33 Okla. 305, 125 Pac. 443; McFarland v. Lanier & Bro., 50 Okla. 336, 150 Pac. 1097; Love v. Kirkbride Drilling & Oil Co., 37 Okla. 804, 129 Pac. 858. In Bentley v. Zelma Oil Co., 76 Okla. 116, 184 Pac. 131, it is held that the conveyance of an interest in an oil and gas lease on land is a conveyance affecting real estate within the provisions of our statute.

As the leases and assignments thereof were required to be in writing, an executory contract for the sale of said leases must also be in writing. Browne on The Statute of Frauds, sec. 230; Potter v. Arnold, 15 R. I. 350, 5 Atl. 379; 20 Cyc. 230. And as an executory contract for the sale of such leases, if made by Woodworth, would have been invalid if in parol, it is obvious that an agreement for the sale of said leases entered into by E. E. Evans and L. D. Evans as agents of Woodworth would be invalid under section 941, Rev. Laws 1910, unless their authority to make said agreement was in writing subscribed by Woodworth. 5 Am. Ruling Cas. 133, 4; Springer v. City Bank & Trust Co., 59 Colo. 376, 149 Pac. 253 Ann. Cas. 1917A, 520.

The only writing that it is claimed Woodworth executed consisted of a page in a plat book on which there appeared a four section plat upon which was marked a description of the land covered by the leases, and beneath this plat appears the following:

"No. Acres ..........................
"Sec. ................. Twp. 4 S. Range 2 E.
"County ...................................
"Lease 2½ years old.
"Present Owner W3.—30 acres
"P. O. ...................................

Is this page in the plat book, coupled with the delivery of the original leases and the abstracts covering the land to L. D. Evans, sufficient authority in writing to sell the leases? In Halsell et al. v. Renfrow et al., 14 Okla. 674, 78 Pac. 118 the Supreme Court of the territory says:

"An agreement for the sale of real property made by an agent is invalid, unless

the authority of the agent is in writing, subscribed by the party sought to be changed. Sec. 780, Wilson's Statutes 1903.

"It is a well-established proposition of general application that a complete contract binding under the statute of frauds may be gathered from letters, writings, and telegrams between the parties, relating to the subject-matter of the contract, and so connected with each other that they may be fairly said to constitute one paper relating to the contract. Beckwith v. Talbot, 95 U. S. 289; Ryan v. U. S., 136 U. S. 68; Bibb v. Allen, 149 U. S. 481. But the facts proven do not come within the rule. In order to be sufficient, the letters, telegrams, and writings relied upon must, by reference to each other, disclose every material part of a valid contract, and must be signed by the party sought to be charged. They must set out the parties, the subject-matter. the price, the description, terms and conditions, and leave nothing to rest in parol. Fox v. Easter, 10 Okla. 527, 62 Pac. 283; Gould v. Stormant, 51 Mich. 636; Eggleston v. Waggoner, 46 Mich. 610; Ferguson v. Blackwell, 8 Okla. 489, 58 Pac. 647.

"It is a general rule that parol evidence cannot be permitted to supply an omission of any essential element of the contract."

And in Baker v. Haswell & Taylor, 36 Okla. 429, 128 Pac. 1086, it was held:

"An agreement for the sale of lands is not valid within the statute of frauds, unless all the terms of the contract, including the consideration to be paid, are evidenced by writing."

The memorandum must contain the essential terms of the contract expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties. Browne on The Statute of Frauds, sec. 371, and cases cited. In Seymour v. Oelrichs, 156 Cal. 782, 106 Pac. 88, 134 Am. St. Rep. 154, the Supreme Court of California said:

"A memorandum to satisfy the statute of frauds must contain the essential terms of a contract expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties."

And, again, in Craig et al. v. Zelian, 137 Cal. 105, 69 Pac. 853, the same court uses this language:

"The statute of frauds was originally enacted 'for the prevention of frauds and perjuries, and an agreement for the sale of the land is required to be in writing, in order that this purpose may be accomplished. The whole object of the statute would be frustrated if any substantive portion of the agreement could be established by parol evidence."

The Supreme Court of the United States. in Williams v. Morris, 95 U. S. 444, 26 L. Ed. 360, said:

"Unless the essential terms of the sale can be ascertained from the writing itself, or by reference in it to something else, the writing is not a compliance with the statute; and, if the agreement be thus defective, it cannot be supplied by parol proof, for that would at once introduce all the mischiefs which the statute was intended to prevent. 2 Kent. Com. (12th Ed.) 511; Norris v. Lain, 16 Johns. 151; Dung v. Parkins, 52 N. Y. 494; Baltzen v. Nicolay, 53 N. Y. 467; Wright v. Weeks, 25 N. Y. 153; Parkhurst v. Van Cortlandt, 1 Johns, Ch. 273; Parkhurst v. Van Cortlandt, 14 Johns, 15."

To the same effect are Chick v. Bridges, 56 Ore. 1, 107 Pac. 478; Selvage v. Talbott, 175 Ind. 648, Ann. Cas. 1913C, 724, 33 L. R. A. (N. S.) 973; Luther v. Bash (Ind.) 112 N. E. 110; Spence v. Apley (Neb.) 94 N. W. 109; Crouch v. Forbes, 63 Wash. 564. 116 Pac. 14; White v. Breen, 106 Ala. 159, 32 L. R. A. 127; Wharton v. Tolbert, 84 S. C. 117, 65 S. E. 1056; Poyne v. Beard, 247 Fed. 247; Lester v. Heidt, 86 Ga. 226, 12 S. E. 214; Boyd v. Paul, 125 Mo. 14, 28 S. W. 171; Fox v. Courtney (Mo.) 20 S. W. 20; Rhodes v. Gallat (Fla.) 70 South. 471. Measured by the rule announced in these cases, the plat book falls far short of constituting authority in writing to sell the leases. The name of Evans does not appear, the price at which they might sell is not shown, and there is nothing whatever indicating that they were authorized to sell the leases, or what, if any, authority they had, or the purpose of the plat and the writing thereon. No one could tell from reading this page of the plat book the purpose thereof, or why it was in the possession of Evans. If Evans had placed the plat book before Franklin, naturally the first inquiry Franklin would have made would have been what authority Evans had, and the answer would necessarily have been in parol. Not only does this plat and the writing thereon fail to contain the essential terms of a contract expressed with such a degree of certainty that it might be understood without recourse to parol evidence to show the intention of the parties, but it fails to contain any of the essential elements of a contract, and does not contain, within itself, any statement whereby authority to sell the leases might be inferred. In fact, there is nothing therein showing that the authority to do anything is conferred upon Evans by any one.

The delivery of the leases, unassigned, and the abstracts to Evans by Woodworth did

not supply the authority in writing lacking, and was not equivalent to written authority required by the statute of frauds. The leases could not be assigned by mere delivery, and under our recording system, the mere possession of the leases is of no practical importance or advantage to either Woodworth or Franklin. These leases could have been assigned and all the rights of the lessee thereunder transferred without the delivery of the original leases, and if necessary, resort had to the public records to ascertain the terms thereof. The delivery of said leases to Franklin by Evans did not aid Franklin in any way. He is in no better position with the leases in his possession than though he had never seen them. To hold that the leases could be transferred by mere delivery, as negotiable instruments, would nullify the statute of frauds and open the doors to admit the very evil sought to be prevented thereby.

It is urged by the defendant in error that the terms of the "unless leases" involved, are such that the time is not fixed for a definite period beyond one year for the performance of the contractual rights between the parties and are therefore, not within the statute of frauds, and in support of this contention he cites McPherson v. Cox, 6 Otto (U. S.) 404, 24 L. Ed. 746; Walker v. Johnson 6 Otto (U. S.) 424, 24 L. Ed. 834, and Ward v Hasbrouck (N. Y.) 62 N. E. 434. The contracts involved in the cases of McPherson v. Cox and Walker v. Johnson did not pertain to an interest in, or lease upon, real estate, and the case of Ward v. Hasbrouck involved an agreement for the leasing of premises for a term of four months, with an option for an extension not exceeding three years. We fail to see that these cases are authority for the position taken.

This court has held that the first subdivision of section 941, Rev. Laws 1910, providing that "An agreement that, by its terms, is not to be performed within a year from the making thereof", applies only to agreements other than those relating to land, and that subdivision 5 of said section governs with reference to agreements concerning real estate. Sullivan v. Bryant, 40 Okla. 80, 136 Pac. 412; Collins-Deitz-Morris Co. v. Elk City Mercantile Co., 48 Okla. 485, 150 Pac. 457.

Having arrived at the conclusion that the contract entered into between E. E. Evans and Franklin was invalid because the authority of Evans was not in writing, it becomes necessary to determine whether or not there has been part performance on the part of Franklin sufficient to take the contract out of the statute of frauds; and considering this question it must be borne in mind that Franklin did not pay the consideration, or any part thereof, that he took possession after Woodworth had repudiated the contract made by Evans, his alleged agent, and after he had sold the leases to Heenan, and that these facts were known to Franklin at the time he took possession, and that he took possession without the consent of either Woodworth or Heenan. The rule in this jurisdiction is clearly announced in Levy v. Yarbrough et al., 41 Okla. 16, 136 Pac. 1120, the second paragraph of the syllabus reading as follows:

"A parol agreement for the sale of lands will be enforced by the courts where the vendee has paid the purchase price, and taken possession, in good faith, of the premises with the knowledge and consent of the owner, and has made permanent improvements thereon. (a) But the mere acceptance of the purchase price under an oral contract is not of itself sufficient to take the sale out of the statute of frauds. (b) Nor will the fact that the owner orders an abstract of the property to be made take such case out of the statute."

In the body of the opinion it is said:

"The courts will enforce a parol agreement for the sale of lands, where the vendee has paid the purchase price, and taken possession, in good faith, of the premises, with the knowledge and consent of the owner, and has made permanent improvements thereon. Harris et ux. v. Arthur, 36 Okla. 33, 127 Pac. 695; Sutherland v. Taintor, 17 Okla. 427, 87 Pac. 900. But the mere acceptance of the purchase price is not of itself sufficient. Halsell v. Renfrow, 14 Okla. 674, 78 Pac. 118, 2 Ann. Cas. 286; Rowe v. Henderson, 4 Ind. T. 597, 76 S. W. 250; Givens v. Culder, 2 Desaus. (S. C.) 172, 2 Am. Dec. 686, Cooper v. Thompson, 30 Ore. 161, 45 Pac. 296; Goddard v. Donaha, 42 Kan. 754, 22 Pac. 708; 20 Cyc. 297, and note 23."

In Halsell v. Renfrow, supra, and Sutherland v. Taintor, 17 Okla. 427, 87 Pac. 900, it was held that the court would enforce a parol agreement for the sale of real estate when the vendee had paid the consideration and taken possession in good faith, with the knowledge and consent of the vendor, and made permanent improvements thereon. Collins v. Lackey, 31 Okla. 776, 123 Pac. 1118. The case of Gault Lumber Co. v. Pyles, 19 Okla. 445, 92 Pac. 175, is very similar to the case at bar, and there the court said:

"Nor do we think the defendant showed such equity as would entitle it to a speci-

fic performance of the contract. It never went into possession of the lot or expended any money or labor upon it in the way of improvements until after the Pyles deed had been refused, the defect in the title discovered, and the refusal of Pyles to carry out the contract was made known to it. The company was not misled or deceived to its detriment, but went onto the lot with its eyes open and the obstacles all apparent. The possession and part payment which will take a case out of the statute of frauds must be a possession authorized by the owners of the property, and must have been taken in good faith, and not fraudulently obtained. No right in equity can be founded upon a trespass or unauthorized possession. Eberville v. Leadville Mining & D. Co. (Colo.) 64 Pac. 200; McKinnon v. Nixon (Ala.) 29 So. 690; Cockrell v. McIntyre (Mo.) S. W. 648.

"The case made by the defendant falls within the law as stated by this court in the cases of Fox v. Easter, 10 Okla. 527, 62 Pac. 283; Halsell v. Renfrow et al., 14 Okla. 674, 78 Pac. 118, Id. 202 U. S. 287."

In Poland v. O'Conner, 1 Neb. 50, 93 Am. Dec. 327, it was held that the acts of taking possession after the vendor had disapproved a parol contract for the sale of land made by his unauthorized agent were without warrant and would not take the contract out of the statute of frauds; and in Boulder Valley Ditch Mining & Milling Co. v. Farnham, 12 Mont. 1, 29 Pac. 277, it was held that possession under an alleged parol contract of sale with knowledge that the owner denied the contract and refused to convey the land is of no avail as an act of part performance, neither is a scrambling and litigious possession sufficient. Purcell v. Collins, 4 Wall. (U. S.) 513, 18 L. Ed. 535.

We are convinced that the acts of Franklin in taking possession of the land under said leases after he knew that Woodworth denied the authority of Evans to sell the leases and had repudiated the contract entered into by Evans, and had sold and assigned the leases to Heenan, will avail him nothing, and will not take the contract out of the statute of frauds.

It seems to be well settled that relief against the statute of frauds is granted through the application of the doctrine of an equitable estoppel, and in most cases fraud enters into the transaction, and because thereof the necessary written evidence of an agreement was lacking. The courts will not permit the defense of the statute of frauds where by so doing the statute becomes an instrument for perpetrating a fraud, but we cannot see that a fraud had

been perpetrated upon Franklin in this case, or that the facts are such as to work an equitable estoppel in his favor. He had never paid any of the consideration, and had not taken possession or expended any sum whatever for improvements or development until after he had been notified that Woodworth had declined to recognize the contract entered into by Evans, and had sold and assigned the leases to Heenan. Franklin had suffered no injury at the time he took possession, and, under his own testimony, could not have gone into possession in good faith under the contract, and with the belief that the terms thereof would be carried out, but his evident intention in taking possession was to seek an advantage in the suit which he had already instructed his attorney to institute.

We have proceeded under the assumption that Woodworth authorized E. E. Evans and L. D. Evans to actually sell the leases, and have found that, under that assumption, such authority was invalid because not in writing, but we are convinced that the judgment of the trial court is clearly against the weight of the evidence, in that the record shows that the only authority conferred upon E. E. and L. D. Evans by Woodworth was to procure a purchaser. It is clear that Evans understood that his authority was limited to that purpose, for he testified that he was not authorized to receive the consideration. If he had authority to sell, he would have been authorized to receive the purchase price. Franklin evidently did not think that Evans had authority to sell, else he would have procured assignments from him, instead of preparing assignments for Woodworth's execution; and, of course, Woodworth did not understand that Evans was authorized to do more than procure a purchaser. No doubt the purpose of Evans in requesting Franklin to execute the contract was, not to bind Woodworth to sell, but to show that he had procured a purchaser ready, able, and willing to purchase, and thereby entitle himself to a commission for the sale of the leases.

Having determined that the contract entered into between E. E. Evans and Franklin was invalid under the statute of frauds, because the authority of Evans was not in writing, and that E. E. Evans and L. D. Evans were unauthorized to bind Woodworth by said contract, and that the acts of Franklin in taking possession of the property covered by said leases, under the facts disclosed, were insufficient to take the contract out of the statute of frauds,

it becomes unnecessary to consider the third inquiry, supra, and the other objections urged to the validity of the contract.

The judgment of the trial court is reversed, and the cause remanded for further proceedings consistent with the views herein expressed.

All the Justices concur.

On Rehearing.

PER CURIAM. Having carefully considered the petition of the defendant in error for a rehearing in this cause, we are satisfied that the former opinion herein is correct, and the petition for rehearing is therefore denied. However, we are of the opinion that said cause should be remanded, with directions to the trial court to enter judgment in favor of the plaintiffs in error and against said defendant in error, canceling the contract between E. E. Evans and the defendant in error, and that a proper accounting be had between the parties hereto, and judgment rendered in favor of the plaintiffs in error and against the defendant in error for the sum or sums of money received by the defendant in error from the sale of oil or gas from the premises involved, less the actual necessary expenses by him incurred in producing and marketing said oil or gas, and less the fair and reasonable value of any equipment necessary to remain in or about the wells on said premises. And it is so ordered.