### NICHLOS v. EDMUNDSON.

No. 14950—Opinion Filed Nov. 25, 1924.

Rehearing Denied Dec. 30, 1924.

1. **Specific Performance—Uncertainty of Contract.**

Specific performance of a contract will not be enforced when any material part of the terms or conditions are uncertain.

2. **Frauds, Statute of—Oral Contract for Five Year Oil Lease—Payment of Price.**

On an oral contract to execute an oil and gas mining lease, for a period of five years, producer's form 88, payment of the purchase price alone is not sufficient to take the contract out of the statute of frauds.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Grady County; Will Linn, Judge.

Action by John B. Nichlos against Mrs. John Edmundson. Judgment for defendant, and plaintiff appeals. Affirmed.

Bond, Melton & Melton, for plaintiff in error.

Everest, Vaught & Brewer, J. B. Allen, and Barefoot & Carmichael, for defendant in error.

Opinion by RAY, C. This appeal is from the action of the trial court in sustaining a demurrer to plaintiff's evidence, and entering judgment for the defendant. The suit is for specific performance of a contract to execute and deliver to plaintiff a commercial oil and gas lease for a term of five years, producer's form 88, on 80 acres of land situated in Grady county.

The evidence shows that the plaintiff was an oil operator, resident of Chickasha, and that the defendant, Mrs. John Edmundson, during all of the time of the transaction, was a resident of Elliott, Ill., and owned a quarter-section of land in Grady county some five or six miles from oil or gas production; that the plaintiff desired to sink a test well in the community of this land, and, through the efforts of a number of property owners, had blocked about 1,200 acres, and entered into a written contract to sink a test well, had executed a bond in the sum of $2,500 to carry out his agreement, had built the derrick, and, on or about the 13th day of April, 1922, had spudded in and commenced the well. The original agreement between plaintiff and the landowners was that he should have leases on 1,400 acres, and, although he had entered into the written contract, given bond, and commenced the well, the property owners were obligated to secure for him an additional 200 acres. April 18, about five days after plaintiff had commenced the well about one mile from defendant's land, Earl Trunk, son-in-law of the defendant, was brought to plaintiff's office in Chickasha by one of the property owners interested in having the test made. Trunk represented to the plaintiff that he was authorized by his mother-in-law to execute to him

a lease on 80 acres of her land, and that he desired to do so. The plaintiff then consulted with his attorney, who was of the opinion, and so advised, that the written authority held by Trunk did not confer upon Trunk the authority and power to execute an oil lease. But Trunk said to the plaintiff, "Well, you go ahead, we'll give you this 80 acres." For the purpose of securing the necessary authority for Trunk to execute the lease, a telegram to the defendant was written with the approval of plaintiff's attorney, and signed by Trunk, as follows:

"Mrs. John Edmonds, Elliott, Ill.

"Have opportunity to secure test oil and gas well in the vicinity of your land, if you will put in eighty acres of your land in oil and gas lease. Wire me authorizing me to lease eighty of your land. Quick action must be had. Answer.

"Earl Trunk."

It was agreed between plaintiff and Trunk that they should wait for an answer to the telegram. After the two, with others, had taken lunch together Trunk went to his hotel to await the answer. Plaintiff did not see Trunk again or have any further communication with him, except to write him one letter. Later in the day, plaintiff went to the hotel and found that Trunk had checked out and gone, but saw a telegram in his letter box. On that day Trunk received the following telegram:

"Elliott, Ill., April 18, 1922.

"Earl Trunk

"Care McFarland Hotel, Chickasha, Okla.

"You may lease eighty acres as requested.

"Julia Edmundson."

After waiting some time, and Trunk not having returned, plaintiff sent the following telegram to the defendant:

"Dated Chickasha, Okla. 4.04 p. m.

"To Mrs. John Edmons, Elliott, Ill.

"Must know definitely if you will give eighty acres for test well on block acreage adjoining and, including your land to close deal must have this eighty. You make mistake if fail to co-operate and give lease to induce development your land. Wire me today collect.

"John B. Nichols"

—and on the following day, April 19, wrote her calling attention to the importance of the test well and its advantage to her, and urging her to execute the lease. It contained the following postscript:

"P. S. Mrs. Edmonds.

"Your lease will be placed in the hands of the Chickasha National Bank, Chickasha,

Okla., and will not be delivered to me until I spud in and begin actual drilling operations. Should the deal fall through for any reason and I not drill the well, then the bank will return to you your lease. I am sure the fairness of this will meet with your approval."

In reply he received the following letter:

"Elliott, Ill., April 24, 1922.

"Dear Sir:

"Your letter of April 18 received, also telegram but have been unable to get in touch with Mr. E. M. Trunk. Please address all my correspondence to him as he is taking care of my business and whatever he does is all right with me.

"Yours truly,

"Mrs. Edmonds.

"P. S. His address is:

"E. M. Trunk, 20 Taylor St. Champaign, Ill."

Plaintiff never had any other communication with defendant than the letters and telegrams above set out. The well was completed and proved to be a commercial gas well and greatly enhanced the value of oil and gas leases in that community.

Clearly, the correspondence between plaintiff and defendant did not constitute a contract. The only communication plaintiff ever received from defendant was the letter of April 24, in which she clearly stated that Trunk was taking care of her business, and instructed plaintiff to direct the correspondence to him. At the time Trunk, the defendant's son-in-law, agreed to execute the lease he had no authority to bind the defendant, at least the evidence does not show that he had such authority, but it is contended that the defendant ratified the agreement. A sufficient answer is that the evidence does not show that she ever knew there was such an agreement.

Plaintiff's right of action must rest upon the oral agreement with Trunk. The evidence shows that Trunk expressed, for himself and for his mother-in-law, a desire for a test well to be drilled in that community, and that they were willing and anxious to execute a lease upon 80 acres to secure such test well, and that he stated that he had the authority to execute the lease and was ready to do so; that he told plaintiff to go ahead and they would execute the lease, but they did not agree as to which particular 80 of the defendant's 160 acres should be leased. Plaintiff wanted the south 80, but it was agreed that it should be left to the defendant to say which particular 80 she would lease. In a letter to Mr. Trunk, written by the plaintiff af-

ter receiving Mrs. Edmundson's letter of the 24th, notifying him that Mr. Trunk had charge of her business, the plaintiff enclosed a blank lease and said, " * * * I am sending you blank lease made out to myself for 80 acres and will allow you to select this 80 acres. * * *" Plaintiff testified that such was the understanding.

Without regard to Trunk's authority to bind the defendant, specific performance cannot be enforced upon two grounds: First, there was no agreement as to the particular 80 of the 160 acres that was to be leased; and, second, even though it should be conceded that the drilling of the test well by the plaintiff in the circumstances was a sufficient consideration, the plaintiff never at any time went upon the land, or took possession, or did any other act or thing which could take the contract out of the statute of frauds.

"It is a well settled principle that specific performance of a contract will not be enforced when any material part of the terms or conditions are uncertain." Strack v. Roetzel, 46 Okla. 695, 148 Pac. 1017.

This is but the statement of a principle upon which the authorities are agreed.

A description of the land to be leased is a material part of the agreement. If it had been the purpose to lease the entire tract it would have presented a different question. No definite agreement was ever arrived at as to which particular 80 of the 160 acre tract should be leased as an inducement to drilling the test well. It was agreed that 80 acres should be leased, but whether the north, south, east, or west 80, was to be left to the decision of the defendant herself, and the proposition was never submitted to her. To decree specific performance, it would be necessary for the court to conclude that there had been a distinct agreement between the parties as to the land to be leased, while the evidence shows there was no such agreement between the parties. But if the contract should be conceded to be sufficiently specific as to the land to be leased, still nothing has occurred to take the contract out of the statute of frauds. This court has decided in a number of cases that payment alone is not sufficient. It is not contended that anything more was done by the plaintiff than the drilling of the test well, which, it is contended, is equivalent to paying for the lease.

"But the mere acceptance of the purchase price under an oral contract is not in itself sufficient to take the sale out of the statute of frauds." Levy v. Yarbrough, 41 Okla. 16, 136 Pac. 1120.

In Adams v. White, 40 Okla. 535, 139 Pac. 514, the court said:

"It has been held that payment of the purchase money alone is not such part performance of an oral agreement to sell real estate as will authorize a court to enforce specific performance. But part payment and taking possession in good faith or taking possession with the knowledge of the vendor and making valuable improvements constitutes such part performance as will ordinarily warrant a court in decreeing specific performance of the contract." Halsell v. Renfro, 14 Okla. 674, 78 Pac. 118, 2 Ann. Cas. 286; Sutherland v. Taintor, 17 Okla. 427, 87 Pac. 900.

In the case of Woodworth et al. v. Franklin, 85 Okla. 27; 204 Pac. 452, it was held that an oil and gas lease creates an incorporeal hereditament, and must be in writing. In that case the above rule quoted from Levy v. Yarbrough was held to be the settled rule of this court.

It may also be observed that by plaintiff's letter to defendant of April 19th, and especially by the postscript, it was represented, or at least implied, that the test would not be made without a lease from the defendant, although plaintiff had signed a contract, given bond for its execution, had spudded in and commenced drilling. It is not made to appear by the evidence that Trunk, defendant's son-in-law, at the time he agreed to make the lease, had any knowledge of such contract, bond, or drilling operations, and plaintiff refused to say, on cross-examination, whether the test well depended on this lease, or whether the well would have been completed without it.

We think the plaintiff did not have an enforceable contract either with the defendant or her agent.

The judgment should be affirmed.

By the Court: It is so ordered.