### BILBY v. BILBY et al.

No. 17699. Opinion Filed June 5, 1928.

Rehearing Denied Oct. 16, 1928.

J. S. Severson and N. E. McNeill, for plaintiff in error.

Robson & Moreland, for defendants in error.

CLARK, J. Plaintiff in error was plaintiff below; defendants in error were defendants below. For convenience, parties will be referred to as plaintiff and defendants.

Plaintiff commenced this action in the district court of Rogers county against the defendants for specific performance of an oral contract to require the defendants to convey to plaintiff three-fourths interest in and to approximately 6,000 acres of real estate located in Rogers county, Okla. Plaintiff and defendants are the only children and heirs of John S. Bilby, deceased.

John S. Bilby, during his lifetime, was a large landowner. In April, 1917, John S. Bilby, being then about 82 years of age, called his children together, the plaintiff not being present; conveyed about 12 000 acres of land located in Wagoner county, Okla., to Russell I. Bilby and Nicholas V. Bilby; conveyed to Nicholas V. Bilby approximately 132,000 acres of land in the state of Texas; and to Russell I. Bilby 20,000 acres in the state of Missouri, and about 640 acres to Mrs. Smith.

After said conveyance the portion of the land over which this controversy arises was purchased by the said John S. Bilby and stood in his name at the time of his death. It is the contention of plaintiff that the deeds executed by John S. Bilby to Russell I. Bilby, Nicholas V. Bilby, and Frances Ellen Smith were trust deeds and that the defendants held the land in trust for the use and benefit of John S. Bilby, and upon his death it should descend in equal shares to his children, and that said conveyances were made for the purpose of defeating the inheritance tax which would be due if the land remained in the name of John S. Bilby at the time of his death.

Shortly after the death of John S. Bilby, plaintiff commenced various lawsuits seeking to recover a one-fourth interest in the land heretofore referred to, that had been previously deeded by John S. Bilby to defendants. A suit was filed in the district court of Wagoner county to recover one-fourth interest in the 12,000 acres, which was later removed by defendants to the federal court of the Eastern District of Oklahoma.

Suit was filed by plaintiff in the state of Missouri to recover one-fourth interest in the 20,000 acres of land located in Missouri. Plaintiff was contemplating filing suit in the

state of Texas to recover one-fourth interest in the 132,000 acres located in Texas

Nicholas V. Bilby had been appointed administrator of his father's estate by the county court of Rogers county, and the plaintiff sought to remove him as administrator and filed an application for that purpose.

The case pending in the federal court of the Eastern District of Oklahoma was tried on or about March, 1922. After the trial the court took the cause under advisement. On the same day plaintiff and the three defendants met in the Turner Hotel at Muskogee for the purpose of reaching an agreement and settling their differences and controversy. It was at this meeting, plaintiff contends, that the oral contract was entered into by which he was to receive the 6,000 acres of land in Rogers county, for which he asks specific performance.

It is the plaintiff's contention that it was mutually agreed between plaintiff and defendants that the litigation should be settled, compromised, and disposed of; that if the case pending in the Eastern District of the state of Oklahoma was decided against plaintiff, he would waive his right of appeal; if in plaintiff's favor, that he would reconvey any interest he obtained by virtue of said judgment to Nicholas V. Bilby and Russell I. Bilby; that the plaintiff should file dismissal of the case pending between plaintiff and defendant Russell I. Bilby in the Western District of the state of Missouri; that plaintiff should abandon his proposed lawsuit in the state of Texas; that plaintiff should dismiss his motion pending in the county court of Rogers county, Okla., seeking to remove Nicholas V. Bilby, as administrator of the estate of John S. Bilby, deceased; that plaintiff would settle certain litigation pending in Scott county, Kan., so that no personal judgment would be rendered against plaintiff.

Plaintiff alleges it was also further agreed that plaintiff should secure a release for all fees and from liability from his attorneys so there would be no debts or liabilities against plaintiff. That it was also agreed that as soon as plaintiff complied with the above-named conditions he was to assist Nicholas V. Bilby in bringing to a close the administration of the estate of John S. Bilby, deceased. That defendants were to pay all the costs of the administration and all the indebtedness against the estate of John S. Bilby, deceased.

Plaintiff further charges that as soon as the order of distribution was made, the de-

fendants and each of them were to execute a deed to Frances Ellen Smith, as trustee, conveying their interest in said land to Frances Ellen Smith, as trustee for the use and benefit of plaintiff herein, same to be held in trust for a period of five years; at the end of said five years same would be conveyed to plaintiff herein.

Plaintiff further alleged that in addition thereto defendants were to furnish him with such stock necessary to farm the land and pasture the same; cattle, horses, mules, goats and hogs; that consideration for the performance of all the conditions as aforesaid to be performed by plaintiff, and the conditions to be performed by defendants, was the settling and compromising the various controversies and lawsuits existing between plaintiff and defendants.

Plaintiff further alleged that at the time of entering into said oral agreement he requested that the same be reduced to writing and that the defendants refused to reduce said agreement to writing. That plaintiff believed said representations of said defendants and each of them, and that they were made in good faith, and that plaintiff proceeded at once to carry out his portion of said contract and agreement. That on the 15th day of January, 1923, he dismissed his appeal in the Muskogee case; he dismissed his case in the United States District Court of Missouri; that he filed in the county court of Rogers county a motion to withdraw his objection to N. V. Bilby acting as administrator of his father's estate; that he complied with all the terms and conditions of said agreement; that he lost valuable rights by the dismissal of his various litigations and the defendants failed and refused to carry out said agreement.

Defendants answered, which answer contained a general denial, admitting that John S. Bilby departed this life on or about November 26, 1919, and left surviving plaintiff and defendants as his heirs. Defendants admitted there were negotiations for the settlement of their differences, but specifically denied that such negotiations ever took the form of a compromise, settlement, or contract. Defendants further allege that if it be found that said agreement was made and entered into as set out in plaintiff's petition, same is for the conveyance of real estate, and was not reduced to writing and comes within the statute of frauds and is unenforceable. Defendants, further answering, state that if said contract was entered into or agreement as alleged by plaintiff, plaintiff would be guilty of laches.

Upon the issues thus joined between plain-

tiff and defendants, cause came on for trial. The trial court found for the defendants. Plaintiff brings cause here for review.

The trial court made no finding upon any special issue. but found generally in favor of the defendants.

The plaintiff presents to this court three propositions:

First, that the judgment, being for the defendants, carries with it the presumption that there was no contract entered into

Second, if contract was entered into, the plaintiff had not fully performed his part of said contract.

Third. if the contract was entered into and plaintiff performed his part of the same, it is not such a contract as equity will enforce.

This cause was presented to this court by oral arguments and briefs in an able manner Plaintiff in error contends that the finding of the court that there was no contract entered into is against the clear weight of the evidence. To determine this fact we must review the evidence as to what occurred between plaintiff and defendants at their meeting in Muskogee in March, 1922.

It is the contention of plaintiff that defendants agreed to deed him 6,000 acres of land or defendants' interest in six thousand acres of land located in Rogers county, upon the performance of specified conditions as set out heretofore in plaintiff's petition. Defendants admit that they proposed to plaintiff that if he would dismiss his suits then pending against defendants, secure a release or arrange his business in Scott county, Kan, so that no judgment would be rendered against him that would be a lien on his real estate, and that if he would procure a release of attorneys' liens that might become a lien on his real estate, defendants were then willing to enter into a contract to place the land in litigation in trust for the use and benefit of plaintiff under certain specified conditions; that is, he was to have it after five years if he had made good.

Plaintiff testified:

"Property was to be turned to me; was not to be turned absolutely at that time. Deeds were to be made. They were to furnish stock and implements sufficient and sufficient money to farm it the first year. It was to be placed in my sister's hands as trustee, and I was to report to her and make good for five years, and if I was worth as much at the end of five years as when I took it, it was to be mine absolutely."

Plaintiff further testified:

"I was to dismiss my suit here. I think there was two suits here and one in Missouri; and I was not to file the suit in Texas."

He further testified that that afternoon or next morning he went to Gibson & Hull's office. where he met R. I. and N. V. Bilby, and M. E Ford. In answer to the question "What was discussed or said at that meeting?" plaintiff answered:

"There wasn't very much discussed; I didn't have much to say, but I got the impression from what I heard amongst them that Mr. Hull was to draw the agreement.

"Q. Ed, after you had reached these negotiations to that extent, it was all the way understood that when these agreements had been entered into or gotten into. if they were gotten into. that it would be put in writing, wasn't it?"

He further testified that no written contract was prepared.

"Q. That agreement was to go to Mrs. Smith at Seattle. Wash. for her signature and approval. wasn't it? A Yes, sir. Q. And was to go to Nick Bilby and Russell Bilby for their signature and approval, wasn't it? A. I suppose so."

He stated the reason he left Muskogee without dismissing his lawsuit there was because he did not think it was necessary at that time.

Mr. N. V. Bilby testified that if the negotiations could be carried out, Mr. Ford was to prepare the contract. and further testified that Mr. Watts, attorney for Ed Bilby, refused to dismiss without a great big attorney's fee.

Mrs. Smith, one of the defendants, testified:

"The idea was to make it free before and keep it free for his occupancy, was the point we were making."

Mr. Ford testified that he was called after the conference.

"Q. Were you called to that room, or did you go to the room? A. Yes. I was called afterward. Q. What transpired when you arrived there? Who was there? A Russell, Nick and Ed, I think, were all that was in the room. Q. What was said and done there, in substance, the best you remember? A. The substance of it was, they were about agreed on what they wanted to do and just wanted to know how it could be done. what the preliminaries were and how. They were agreed on what each side was willing to do if it could be done."

He further testified:

"Q. What was the result, Mr. Ford, of these negotiations, if any? A. Well, one of

the things that was to be done, one of the conditions that was to be embodied in the contract, if the contract was entered into, was that Ed should free himself of all outstanding obligations of every kind and character."

The testimony of all three defendants was to the effect that Ed was to free himself of all outstanding obligations before the defendants were willing to enter into a contract with the plaintiff to convey him the real estate in question.

The evidence further disclosed that at a meeting at Gibson & Hull's office, Mr. Watts, attorney for Ed Bilby, refused to release his claim or attorney's lien.

Mr. Ford, who was acting for all parties in the negotiation of settlement, testified that he advised defendants that if settlement was made of the suit between plaintiff and defendants, attorneys of plaintiff would have a lien on all property recovered or received in settlement by plaintiff, for their fees. Defendants did not want to enter into the contract or convey the real estate to plaintiff without all the liens being released. Mr. Ford further testified that at the meeting at Gibson & Hull's office Judge Watts refused to release his lien and demanded an attorney fee of $5,000. Judge Watts said to Russell Bilby, "You have not won this lawsuit yet. Judges sometime change their minds, and we stand a good show to make Judge Williams change his mind on this, because I think he is wrong." Russell Bilby replied, in substance: "I will lose the whole thing before you will get a dollar of John S. Bilby's money, if I can keep you from it."

Mr. Ford further testified: "We quit there in the office. Before Russell left and before Judge Watts left, they just said 'We'll fight it out,' and that was the end of it."

This was the statement of the chief counsel for plaintiff, Ed Bilby, made subsequent to the meeting in the hotel, at which plaintiff, Ed Bilby, claimed that a settlement was reached.

Testimony further discloses that, after this, briefs were filed in the federal court by plaintiff and defendants, and that plaintiff prosecuted his suit against defendants with due diligence, and almost a year later judgment was rendered by the court in favor of the defendants.

We believe that the finding of the trial court is not against the clear weight of the evidence, but is supported by the clear weight of the evidence, to the effect that no contract was ever entered into for the reason defendants consistently refused to enter into any contract with plaintiff unless plaintiff could get all claims against him that would become liens on the real estate discharged. This the plaintiff failed to do.

The evidence further discloses that at the time the plaintiff dismissed his lawsuits, waived his right of appeal in the federal court, and dismissed his suit in Missouri, he stated that he was doing so without any consideration.

The rule is that applications to the court to compel specific performance are addressed to the sound discretion of the court, the sound judicial discretion, regulated by the established principles of equity, and the execution of a contract must not only be distinctly proven, but its terms must be clearly and distinctly ascertained; the contract must be reasonable, certain, legal, mutual, upon valuable, or at least meritorious, consideration.

The proof which would justify a court of equity in decreeing the specific performance of a contract, the existence of which depends on parol testimony, must be clear and conclusive, and there must be no reasonable doubt that the contract was made and that all of its terms have been clearly proven. A court will not decree specific performance where it is unable from all of the circumstances of the case to say whether the minds of the parties met upon all the essential particulars.

In the case at bar the testimony of the defendants was to the effect that no agreement was reached and that if an agreement was reached it was to be reduced to writing.

Plaintiff testified that an agreement was reached, and that he had complied with his part of it. Defendants all contend, and this is not specifically denied by plaintiff, that all attorneys' liens were to be released before the contract was entered into. In so far as this record discloses, if Judge Watts had an attorney's lien, it is still in existence and has not been released.

This court said, in the case of Webster v. Neal, 119 Okla. 93, 248 Pac. 596, in the first paragraph of the syllabus:

"A decree for specific performance will not be granted unless the evidence of the making of the contract is clear and convincing, and unless its terms, the consideration on which it was founded, and the time of its execution, are clearly established."

Plaintiff failed to prove, first, his contract, and, second, that he had complied with the contract, as alleged in his petition.

This court, in the case of Telford v. Ring,

79 Okla. 92, 191 Pac. 179, in the first paragraph of the syllabus said:

"Where the court is compelled to enlarge upon negotiations to complete a contract for the sale of real estate, specific performance cannot be had."

Also, in the case of Nichols v. Edmundson, 105 Okla. 202, 232 Pac. 68, in the first and second paragraphs of the syllabus, said:

"Specific performance of a contract will not be enforced when any material part of the terms or conditions are uncertain.

"On an oral contract to execute an oil and gas mining lease for a period of five years, producer's form 88, payment of the purchase price alone is not sufficient to take the contract out of the statute of frauds."

In Plante v. Fullerton, 46 Okla. 11, 148 Pac. 87, the second paragraph of the syllabus is as follows:

"In an action for specific performance of an alleged contract for the sale of realty, it is not the function of a court of equity to enlarge upon negotiations between, or complete a contract for, parties who have not themselves agreed fully upon its terms, but only to enforce rights arising out of a valid, existing agreement."

In the case at bar the record discloses that both sides contemplated something further as necessary to be done in the way of ascertaining the subordinate details and conditions essential and incident to the main subject-matter of the proposed contract. Under this condition one of the parties is not entitled to specific performance. The minds of the parties must have met upon all terms of the contract the specific performance of which is sought to be enforced.

A number of cases are cited in briefs of plaintiff and defendants, but the cases cited herein state the general rule, and from the facts and law we must conclude that the judgment of the trial court was correct, and the same is affirmed.

MASON, V. C. J., and PHELPS, HUNT, and HEFNER, JJ., concur.

HARRISON and LESTER, JJ., dissent.

BRANSON, C. J., disqualified, not participating.

---

HARRISON, J. (dissenting). I regret that I cannot concur in the majority opinion, regret that a conclusion has been reached from which I feel it my duty to dissent.

In my opinion and judgment, formed from a reading of the record and the briefs and authorities cited, as well as many other authorities not cited in the briefs, it is my clear conviction that the record has been misinterpreted and misconstrued, and that the law has been erroneously applied.

This was not a suit to enforce specific performance of a written contract, nor a contract which had to be reduced to writing to become effective, which appears to be the theory upon which the majority opinion is based, but was a suit to enforce a partially executed oral agreement.

It appears from plaintiff's petition that the facts and circumstances which brought about the suit were: That John S. Bilby, the father of plaintiff and defendants, was possessed of approximately $5,000,000 worth of real estate, situated in different states, some 12,000 acres of which were situated in Oklahoma, some 20,000 acres situated in the state of Missouri, and some 132,000 situated in the state of Texas, besides real estate holdings in other states. That, being 82 years of age, and realizing the uncertainties of life, he issued a call to all of his children to meet, in order that he could make some disposition of his vast estates. Defendants in error attended the meeting, but plaintiff, for some reason being unavoidably prevented from going, did not attend.

It should be borne in mind in these preliminary statements that the plaintiff was not overlooked by his father, nor intended to be ignored by his father, but was invited the same as the other children, but the father, realizing his age and the possibility of death, and feeling assured that the other brothers and sister would do the right thing by the absent brother, deeded them the lands that he had. For the purpose of this suit it is immaterial what land was deeded to each or either of his children. They were all grown and married and had families. He deeded all the property which he possessed to the other children. After his death, the plaintiff acting either upon information which he had received or upon the theory that his father had deeded this property to the other children, in trust to be kept and equally divided after their father's death, such property having been conveyed to the other children without any consideration passing to their father, he asked and insisted upon a settlement and division of the property pursuant to the wishes of their deceased father. And upon their refusal to do so, he brought suit in the United States District Court of Missouri to have the deed to the land situated in Missouri declared a trust deed for the benefit of all the children. A like suit was brought

for a like purpose in the district court of Oklahoma, for some 12,000 acres of land situated in Oklahoma, which suit was later transferred to the United States District Court for the Eastern District of Oklahoma, and had prepared to institute suits to have the deed to the 132,000 acres of land situated in the state of Texas declared to be a trust deed, and had prepared also to bring suits for other property situated in other states. He had also filed proceedings in the county court of Rogers county, Okla., to have his brother, Nicholas Bilby, removed as administrator of his father's estate; that is, the estate which his father had accumulated after he had made the aforesaid deeds and before his death and had died without making any disposition of same. The suit which had been transferred to the United States District Court of the Eastern District of Oklahoma went to trial, and the court took the same under advisement before rendering judgment. After the conclusion of the trial and before the court rendered its judgment, the plaintiff and defendants, his other two brothers and his sister, entered into an oral agreement, by which the defendants agreed to convey their interest in the 6,000 acres of land which their father had accumulated, after making the aforesaid deeds, and before his death, to their sister, Ellen Smith, in trust for plaintiff, to be held in trust for a period of five years, after which, if plaintiff made good (what is meant by good is explained in the testimony), the deed was to become absolute, conveying fee title to him; in consideration of which deed he was to do the following things: That as to the case pending in the federal court of the Eastern District of Oklahoma, plaintiff should waive his right of appeal in the event judgment be rendered against him. That the plaintiff should file a dismissal of the case pending in the Western District of Missouri. The plaintiff should refrain from bringing suit in the state of Texas to recover a one-fourth interest in that land. That he should dismiss his motion or appeal seeking to remove Nicholas V. Bilby as administrator of the estate. That there was a suit pending in the state of Kansas against plaintiff, seeking to foreclose a mortgage on a large tract of land, and the plaintiff should settle that litigation so there would be no deficiency judgment against plaintiff. Plaintiff should secure releases from his attorneys releasing him from all liens or fees. The plaintiff was then to assist Nicholas Bilby in closing up the administration of the estate of John S. Bilby.

The foregoing is, in substance, the allegations of the petition. In support of such allegations, the plaintiff, on pages 296, 297, and 298, testified as follows:

"The conclusion was, we came to this agreement: They was to turn to me land in Rogers county, excepting the lands in sections 32 and 33, township 20, range 16. They was to turn the Arkansas property to me under this condition. Russ asked no consideration. Nick asked the deeding by me of my interest in the New Jersey property to him for his interest in the Arkansas property. I owed my sister a ten-thousand dollar note and I was to dispose of the land as best I could and apply her one-fourth interest to the liquidation of that note. If there wasn't enough to pay the note, she was to cancel the note. I was to dismiss my suits and get rid of the Kansas matter.

"The property that was to be turned to me, was not to be turned absolutely at that time. The deeds were to be made, they were to furnish stock to stock it and implements sufficient and sufficient money to farm it the first year. It was to be placed in my sister's hands as trustee, and I was to report to her and make good for five years. And if it was worth as much at the end of five years as it was when I took it, it was to be mine absolutely."

Plaintiff also alleged and testified on the stand that he had done all things required of him to be done under their agreement; that he had dismissed his suit in Missouri, had waived his right of appeal from the judgment of the United States District Court of the Eastern District of Oklahoma, had dismissed his suit to have his brother, Nicholas, removed as administrator, and abandoned his suits in the state of Texas and other states, had cleared up the litigation against him in the state of Kansas, and procured releases of all attorneys' liens.

He introduced in evidence a letter, copy of which he addressed to each of his brothers and his sister, as follows:

"The enclosed shows to you that I have cleaned the slate and released myself of attorney fees. You have said what you would do under these conditions. Now will you or won't you? Kindly let me know at once, as it is spring, and I must get out and do something else if you don't."

He also introduced replies to such letter, from his brother Nicholas, as follows:

"I have your letter of the 9th inst enclosing dismissals, it seems all right as far as I know except the one on the Allen land in section 4-16-15, which I understand Mr. Walker of Tulsa is handling. Please see him and get this one dismissed and I think we will all have a little peace and rest. I go to Texas tonight, but will be back in a few days and will see you.

"Your brother Nick."

And from his brother, Russell I. Bilby, as follows:

"Dear Brother:

"Your letter to hand and contents noted. Will say that I am ready as I have been at all times to turn the Graham ranch to you, at least my interest in it & I think Nick and Nell are in the same mind.

"If you will get down along side of Nick & help clear up the administration you can get to doing business just that much quicker. You know as much about the condition as I do, probably more, & if there is any way that it can be turned to you now I am ready to do so.

"The thing for you to do as I see it is to get busy and help clean it up. Will be down soon as can get away from here.

"Yrs, R. I. Bilby."

On page 547 of the record, the defendant Nicholas Bilby, after detailing the things which the plaintiff Ed was to do, testified, and in answer to the question:

"Q. What were you parties to do in case he settled with his lawyers and in case he dismissed all litigation and settled the Kansas matter? A. We were to give him possession of the Graham ranch for a period of five years. We were to give him possession, use and benefit of the Graham ranch, the Rogers county property, that is, our interest, for five years. At the end of the five years, if he made good, he was to have the title to our share. Q. What was to be considered making good? A. Russell said, if you have as many dollars in property and money as when you start, I will say that is making good. I think we all acquiesced in that. Q. Were you not also to furnish him sufficient stock to start farming the place? A. A sufficient amount of hogs and stock and cattle. I don't think he contemplated farming it much himself, but to have it farmed by tenants; he was to have some hogs and a few cattle and some money for running expenses, and was to make his report, I think monthly to the trustee." (That is, Mrs. Smith, the sister.)

Russell I. Bilby testified on pages 489 and 490 of the record, as follows:

"Q. What was your and Nick's proposition by which this property was to be in Mrs. Smith as trustee and held five years at that time become his? What was the conditions attached to that? What was he to do?

"A. Mr. Ford advised us that his attorney's fees, whatever they were, would have to be cleared away before the completion of the scheme that we had worked on; that, and he was to—Ed. was to dismiss all the suits, and he was to endeavor to get his Kansas deal straightened out so there would be no deficiency judgment there that would

come in against him afterwards. He was to go on this property in person and bring his wife and family there, and he was to have the land in Rogers county placed in trust with Mrs. Smith as trustee, for five years. At the end of the five years, if he made good, we was to deed him our interest in the land. He raised the question what would be making good, and I said, if at the end of the five years he had as many dollars or as much money as when he commenced, I would say he made good. That is the substance of what was done."

Mrs. Smith, the sister, on page 561 of the record, admitted that she had received the letter from Ed and copies of the letters, replies, from Nick and Russell; that she further understood the agreement; that when Ed had complied with all the things, then the land in Rogers county was to be conveyed to Ed for five years under her trusteeship; at the expiration of five years, if he made good, she and her brothers would convey their interest in said land to Ed.

None of the witnesses testified that at the time the oral agreement was reached in the Turner Hotel, in the city of Muskogee, such agreement was not to become binding until reduced to writing, and the subsequent acts of the parties show conclusively that the carrying out of the terms of the agreement was not dependent upon its being reduced to writing; they were brothers and sister, they had entered into an oral agreement, through which he was to have a portion of his father's estate; he relied on their promise, made in the oral agreement, and they acquiesced and he proceeded to carry out the terms of same on his part, and did carry out every condition on his part which he could possibly carry out until they performed some of the conditions of their part, by putting him in possession of the land. But after he had settled his litigation in Kansas, at a forfeiture of his equities in the land involved, had waived his right to appeal from the judgment of the United States District Court at Muskogee, had dismissed his suit in the United States District Court in the state of Missouri, had abandoned his intention to bring suit in the state of Texas, and had placed himself in a position where it would be impossible to restore him to his original rights,—after he had done all these things, pursuant to the oral agreement, then for the first time the defendants began to justify their failure to perform the conditions on their part by saying there was no contract and was not to be any until it was reduced to writing. The record discloses conclusively that the reducing of the contract to writing was never made a condition of performance

on their part until after he had sacrificed and relinquished all of his rights in carrying out the conditions of the oral agreement. A clearer case of part performance of an oral agreement to convey real estate could not be made than this record presents. This was a suit to enforce performance of a partially executed oral agreement. No one can read the record and fairly say that no oral agreement was reached. No one can read the record and not say that, acting upon the oral agreement, the plaintiff had surrendered every right which he had at the time the oral agreement was entered into.

A great deal of ado has been made in the briefs of defendants and in the majority opinion about his not securing a release from one certain attorney, Watts, but, as we view the record, this was none of defendants' business. It was an arbitrary condition imposed upon the plaintiff after he had sacrificed all of his rights, and, as a matter of fact, he had procured releases from all his attorneys before this suit was filed, but defendants claim, or, at least, Russell Bilby claimed, that this was done after the matter "all blowed up." But the record discloses that the matter had never been declared to be "blowed up" until after plaintiff, Ed Bilby, had sacrificed all his legal rights in pursuance of the oral agreement. In my judgment, the contention as to the lien, and the contention as to his failure to obtain releases from the attorney, Watts, within a certain time is all a dodge and a subterfuge, and was never resorted to until after the plaintiff had sacrificed and surrendered all his legal rights. This contention is received with little grace. It means that defendants had so much love for their brother, and felt so much interest in his welfare, that they would rather deprive him of all interest in his father's $5,000,000 estate, and kick him out penniless into the world, than bear the thought of a few thousand dollars' attorney's lien hanging over him.

The circumstances of this case conclusively take it out of the statute of frauds. See Halsell v. Renfrow, 14 Okla. 674, 78 Pac. 118; Harris v. Arthur, 36 Okla. 33, 127 Pac. 695; McCoy v. McCoy, 30 Okla. 379, 121 Pac. 176; Chowning v. Graham, 74 Okla. 232, 178 Pac. 676; Johnston v. Baldock, 83 Okla. 285, 201 Pac. 654; Cannon v. Unruh, 84 Okla. 36, 202 Pac. 182; Riggles v. Erney, 154 U. S. 244, 38 L. Ed. 976.

In Riggles v. Erney, supra, the Supreme Court of the United States said:

"Indeed, the rule is too well settled to require further citation of authorities that, if the parol agreement be clearly and satisfactorily proven, and the plaintiff, relying upon such agreement and the promise of defendant to perform his part, has done acts in part performance of such agreement, to the knowledge of the defendant, acts which have so altered the relations of the parties as to prevent their restoration to their former condition, it would be a virtual fraud to allow the defendant to interpose the statute as a defense and thus to secure to himself the benefit of what has been done in part performance."

All of the above cited cases are to the same effect. In the case at bar, the oral agreement was positively testified to by the plaintiff and clearly admitted by each and all of the defendants. The record conclusively shows, and it is nowhere denied, that the part performance on the part of the plaintiff in pursuance of his part of the oral agreement was done with the full knowledge of defendants, with the acknowledgment of written notice that he had performed his part and had thereby placed himself in a position where it would be impossible to restore him to his original rights.

Hence, in view of the record and the law applicable to the record, I dissent from the majority opinion.