## ILLINOIS BANKERS LIFE ASSURANCE CO. v. POTES.

No. 31484. Sept. 26, 1944.

Rehearing Denied Oct. 17, 1944.

Application for Leave to File Second Petition for Rehearing Denied Nov. 14, 1944.

152 P. 2d 925.

John C. Powell and Charles F. White, both of Sulphur, for plaintiff in error.

Holmes H. Colbert, of Sulphur, for defendant in error.

RILEY J., Defendant in error, herein referred to as plaintiff, commenced this action in the district court of Murray county against plaintiff in error, herein referred to as defendant, to recover an agent's or broker's commission on the sale of a tract of about 352 acres of land in Marshall county.

The petition of plaintiff, after certain formal allegations, alleges, in substance, that on or about November 4, 1940, defendant employed and authorized plaintiff to sell the tract of land described, for the sum of $7,500 or more, and agreed to pay as his commission or compensation five per cent of the selling price, said contract being partly oral and partly written, the written part consisting of a letter, a copy of which was attached to the petition and made a part thereof; that plaintiff performed all the conditions of the contract on his part; that he solicited prospective purchasers and submitted an offer in writing from Abe Ross to purchase said land and pay therefor the sum of $7,500 and that said Abe Ross was able, ready, and willing to buy and pay for said land on the terms stated by defendant; that on the 6th day of November, 1940, defendant, with the aid of plaintiff, induced the said Abe Ross to increase his offer to

the sum of $8,151, and that Ross was able, ready, and willing to buy said land and pay said sum therefor, but the defendant disregarded said offer and sold said land to Henry Kemnitz and Eva Lena Kemitz for $7,995, being $176 less than the offer of plaintiff's client, Abe Ross. Prayer was for the judgment for $407.55, with interest at 6% from November 6, 1940.

The letter relied upon and made a part of the petition reads:

"November 4, 1940.
"Mr. Ira Potes,
"Box 12,
"Sulphur, Oklahoma.

"Re: Elmer L. Cooper, RE No. 75
"Marshall County, Oklahoma

"Dear Sir:

"Confirming my telephone conversation with you this morning, I shall be pleased to submit an offer on the above as per my letter of November 2d changed so that the earnest money will be $250.00 instead of $750.00 and that means that the cash payment at time of delivery of deed will be $500.00 *greater* than as set out in my former communication.

"This is also to confirm that we are not negotiating with Mr. Ira Ross and, in the event you close a deal at this time with him that is satisfactory to us, you will be allowed a commission of five per cent.

"Yours truly,

"E. J. Bodman"

"EJB-McC

Defendant's general demurrer to the petition was overruled.

Answer was by denial that defendant employed and authorized plaintiff to sell the land, and allegation of the fact that plaintiff was only to solicit purchasers for the real estate; that defendant was under no obligation to accept any offer made; that the company is not authorized to convey real property except where the offer is submitted to its board of directors and by said board accepted; that the offer submitted, as alleged in plaintiff's petition, was rejected by the board of directors; that no contrary agreement was made by any officers or agents of the corporation. The answer denies any oral contract between plaintiff and defendant, but alleges that if there were any oral negotiations these were merged in the written offer of purchase; that any alleged agreements, either oral or written, for sale of lands owned by defendant, not authorized by it in writing, would be invalid, and if in fact made, was invalid as within the statute of frauds.

It is contended that the petition alleges that defendant employed and authorized plaintiff to sell the land, but does not plead authority in writing, and for that reason the petition does not state facts sufficient to constitute a cause of action.

Defendant cites Woodworth et al. v. Franklin, 85 Okla. 26, 204 P. 452; Franco Am. Securities et al. v. Guillott, 186 Okla. 302, 97 P. 2d 756, and other similar decisions of this court, to the effect that a sale of land or an interest therein, by an agent, is invalid in the absence of written authority from the owner specifically and with certainty empowering the agent to effect the sale.

These were cases in action to establish title. This is not such an action. Defendant also cites Morrill v. Barneson, 30 Cal. App. 598, 86 P. 2d 924. That case holds that a broker's contract to sell land on commission is within the statute of frauds and invalid unless in writing.

Such is not the law in this jurisdiction.

In Pliler v. Thompson, 84 Okla. 200, 202 P. 1016, it is held:

"The usual provisions of the statute of frauds requiring contracts for the sale or purchase of real property to be evidenced by a written memorandum thereof are intended to apply only to

agreements which contemplate effecting a change of some kind in the title of the property involved, and have no application to a mere contract of employment of a real estate broker in securing a purchaser for the property so as to defeat the rights of such a broker acting under parol authority to recover the agreed commission."

There was no error in overruling the demurrer to the petition.

It is contended that the trial court erred in overruling defendant's demurred to plaintiff's evidence, and in rendering judgment for plaintiff; that the judgment is not sustained by any evidence and is contrary to law.

The evidence shows that defendant was the owner of the land; W. Lockhart was its general agent with office in Oklahoma City. E. J. Bodman was its special representative in charge of leasing defendant's lands, collecting rents, and authorized to procure offers to purchase land and transmit these to the home office of defendant at Monmouth, Ill.

Plaintiff was a real estate broker engaged in buying and selling real estate on commission. His office was in Sulphur, Okla. The land involved was known as the "E. L. Cooper, R. E. No. 75." On July 8, 1940, plaintiff wrote Mr. Lockhart that he had a client who would be interested in buying 80 acres of the land, but if the company would not sell without selling all, the client might take it all. Asked for a price on the 80 acres and also on all the land, the letter then stated: "I would expect the agent's usual 5% commission for handling in case of sale."

October 23, 1940, Bodman wrote plaintiff as follows:

"Mr. Ira Potes,
"823 West 11th,
"Sulphur, Oklahoma.

　　"Re: Elmer L. Cooper RE No. 75
　　　　"Marshall County, Oklahoma

"Dear Sir:

"We are not in position to sell this other than in block of the whole.

"I will be willing to submit an offer of $7500.00 on terms of 25% cash, balance over a long period of time with interest at 5% reserving fifty per cent of the oil and mineral rights.

"If your client is interested on this basis, will send you down a regular form for information. Of course, it is understood that in no event will we pay a commission if we are negotiating at this time with the same party that you would be offering the farm to.

　　　　　　"Yours truly,
　　　　"(signed) E. J. Bodman.
　　　　　　　"E. J. Bodman"

Plaintiff submitted a formal offer to purchase, by his client, Abe Ross. This offer was in writing on a form furnished by defendant. Therein plaintiff's client offered and bound himself to purchase this land for the sum of $7,500, payable $250 as earnest or forfeit money, to be paid with the offer, $1,000 cash on execution and delivery of the deed. Balance $6,000 to be evidenced by notes secured by first mortgage on the land.

The offer as to form, financial statement, and terms was in every way acceptable to defendant. With the offer was presented a cashier's check in the sum of $250 payable to Abe Ross and properly indorsed.

Bodman apparently had, in the meantime, been negotiating with Mrs. Eva L. Kemnitz and her husband Henry Kemnitz for the sale of said land to them. On November 4, 1940, after being advised that the offer of Ross was in the mail, Bodman had a conversation with Mrs. Kemnitz. He testified that she called him over the telephone and informed him that she was sending in an offer to purchase the land. Apparently in that conversation, Bodman informed Mrs. Kemnitz of the offer by Ross. On the next day, November 5th, Bodman wrote Mrs. Kemnitz as follows:

"508 Midwest Building,

　　　　　　"November 5, 1940.

"Mrs. Henry Kemnitz,

"Route No. 2
"Davis, Oklahoma.

"Elmer L. Cooper RE No. 75
"Marshall County

"Dear Mrs. Kemnitz:

"I had a conference with Mr. Lockhart, who has charge of the Southwestern operations of the Company, this morning. I fully acquainted him with our conversation over the telephone last nite and we concluded that in the event that your proposal, accompanied by a check, came in today post marked November 4, that we would give it priority over any other proposition that we might have, notwithstanding the fact that, as I told you, that I believe that the other party has his proposal, in proper form and with check, in the mail yesterday.

"Since my conference with Mr. Lockhart this other proposal has come in, with check dated Nov. 4, however, due to the fact that you have been so anxious for this place and yet been unable to get your husband to agree to the proposition, that I would recommend that we hold up selling under the other proposal until the day has past and if we receive your proposal and check dated November 4, as outlined above, we give it preference.

"Yours very truly.

"EJB:si          "E. J. Bodman

"Special Representative."

Bodman, according to the testimony of the plaintiff, called plaintiff over long distance and told him of the lady's bid.

On November 6th plaintiff went to the office of Bodman in Oklahoma City. There Bodman told plaintiff of the offer of Mrs. Kemnitz, and stated that her offer was in the mail for $7,500. Mr. Bodman testified:

"Then later about nine o'clock in the morning she came in and I had a conversation with both of them together, setting out that here was a case where there were two offers here in a day and that I was bothered, that I was going to call up the Chicago office to find out what I must do about it and I did, Mr. Fidler, the Treasurer, the man to whom I report, stated the only thing I could do under the circumstances was to take the offer of Mrs. Kemnitz without any commission. I explained to him I didn't want to do that, that Mr. Potes had put some work on this thing and that I would rather let him have an opportunity of bidding without knowing what the other bid was. By the Court: What was Mrs. Kemnitz bid? A. $7,500, the same as his without any commission. Then I explained, you see I don't work on a commission, and in the presence of each, Mrs. Kemnitz and Mr. Potes, I told them to go ahead and figure out the most they would pay and put it in a written form in a sealed envelope and that would be the bid I would recommend to the Company. Now Mr. Fidler and no other officer had any authority - - - (Interrupted)

"By Mr. Colbert, Counsel for Plaintiff: We object to that. By the Court: Tell what the facts are and I will determine who had the authority. A. Mr. Potes was not told nor either Mrs. Kemnitz that the bid that was given them would be accepted, it was stated that that would be the bid that would have to go in to the Company, but I did state that Mrs. Kemnitz' bid was higher to the Company than Mr. Potes and that that would be the bid I would have to recommend. Q. Did they understand there when they were talking there that the bids that were submitted to you, that you had opened, would have to be submitted to the Company? A. Yes, there was no doubt about that, in other words, the offer to purchase itself shows that. Q. You advised each of them what your recommendation would be? A. Yes, and in the presence of each. Q. And did you submit these offers to the Company? A. You mean the $8,150 and the $8,025? Q. Yes, sir. A. No, I did not, I phoned Mr. Fidler and told him that this was a lower offer of Mr. Potes and therefore I wasn't sending it in. By Mr. Colbert, Counsel for Plaintiff: We object to what he told Mr. Fidler. By the Court: No, that is what he did. Q. (By Mr. Powell) You did recommend Mrs. Kemnitz' bid? A. I did, it was several days before I could get that approved."

Cross-examined, he testified further:

"Q. (By Mr. Colbert:) And the fact

is that you right then and there when those offers were submitted in your office in Oklahoma City, you tossed back to Mr. Potes the contract to purchase of Mr. Ross here? A. Yes, sir. Q. And the cashier's check? A. Yes, sir, that is correct. Q. You didn't take that up with the company when you did that, did you? A. No, I didn't. Q. Did you receive that check in the mail that you wrote the lady to send in there? A. I did not."

There is no direct evidence that defendant ever gave plaintiff a definite or fixed price of the land. But from the record, the trial court could readily infer that an offer of $7,500 would be acceptable to the company.

This inference could be based upon the fact that Bodman declined to consider the first tentative offer by Ross of $7,000, but writes back that he would submit an offer of $7,500 allowing a commission at 5%. He promptly advised Mrs. Kemnitz of plaintiff's offer and apparently urged her to hurry in an offer.

The trial court found as a fact that plaintiff did procure a purchaser who was ready, willing, and financially able to purchase the property and that the terms of his offer were likewise acceptable to defendant. The facts and circumstances in evidence support this finding.

It was principally through plaintiff's effort that any sale was consummated.

Affirmed.

CORN, C. J., and OSBORN, HURST, DAVISON, and ARNOLD, JJ., concur.