**SOTTONG et al. v. MAGNOLIA PE-
TROLEUM CO.**

No. 3467.

Circuit Court of Appeals, Tenth Circuit.
July 7, 1947.

Rehearing Denied Aug. 6, 1947.

Ram Morrison, of Oklahoma City, Okl., for appellants.

W. R. Wallace, of Oklahoma City, Okl. (Wallace Hawkins, of Dallas, Tex., on the brief), for appellee.

Before PHILLIPS, BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal by the plaintiffs, herein called the appellants, from a judgment for the defendant below, Magnolia Petroleum Company, in an action for the cancellation of an oil and gas lease on a tract of land in Garvin County, Oklahoma. The decision turns upon whether the transaction in question constituted an offer to lease the premises and was withdrawn before acceptance, or whether it constituted an agreement which obligated the oil company to pay the consideration subject only to the examination of the title to determine its merchantability. The trial court found that Mrs. Sottong offered to sell the lease for a bonus of $50 per acre and that Magnolia, through its representative, Lanier, accepted the offer. The court further found that Mrs. Sottong told Lanier that it would be satisfactory with her for him to take the lease with him and send her the money as soon as he could check the title. Based

on these findings, the court concluded as a matter of law that the lease had been executed and delivered to Magnolia with the understanding that it had the right to check the title before paying the consideration, and that it was bound to pay the consideration if the title was good. The only question before us is whether these findings are supported by substantial evidence.

Most of the facts are not in dispute. Mrs. Sottong was the owner of the land in question. On December 2, 1936, she and her husband executed a ten-year oil and gas lease to F. M. Roland, which lease was assigned to Magnolia Petroleum Company, the defendant herein. This lease expired by its own terms December 2, 1946, unless the drilling of an oil and gas well was commenced prior thereto. In July, 1945, Mrs. Sottong wrote a letter to Magnolia, stating that she had received offers for a "top lease" on the tract of land in question and inquiring whether Magnolia would be interested in such a lease. On August 3, 1946, Magnolia replied, stating that since its lease had approximately 16 months to run, it would prefer to wait until a later date to consider a top lease, but that it would be glad to consider any offer she might make. [1] On January 29, 1946, Mrs. Sottong wrote Lanier, an agent for Magnolia, stating that she had been approached by F. A. Appling, who had made an offer for a top lease, and inquired if he represented Magnolia. She also stated that she had been approached by Fred Roland, who stated that he was representing Magnolia. After receiving this letter, on January 31, 1946, Lanier went to Tulsa and called on the Sottongs. He informed them that neither Appling nor Roland represented Magnolia. Mrs. Sottong stated that they had offered her $50 per acre for a top lease but that she preferred to lease to Magnolia. Lanier advised her that he did not have authority to pay $50 per acre, but would undertake to get authority from Magnolia and would call her the next morning. He left with the understanding that he would ascertain whether Magnolia would pay $50 per acre. The next morn-

ing he contacted the Dallas office and obtained authority to pay her $50 an acre for the new lease. On the morning of February 1, Mrs. Sottong called Lanier's hotel and requested that he call her at a designated phone number. When he called her, she stated that she had talked to her sister, who thought that it was a good deal, and decided that she would not work that day but would stay home and close up the deal. After finishing his lunch that day, Lanier went to a public stenographer, had the lease prepared, and, accompanied by the stenographer, who was a notary, went to the Sottong residence, where he met her and her husband to execute the lease. He also prepared and took with him an escrow letter to the bank and later prepared a draft drawn on Magnolia for $8500, and took it out to her for her signature. When he presented the lease for signature, he told her that he did not know how she would want to handle it, whether she would want to send it to the bank for collection or take it to her bank, or that he would take the lease with him if that is what she wanted. Lanier testified that when he took the draft back for her signature, he told her that it would be necessary for her to sign the draft if she wanted to send it to the bank, and that she replied that she did not care, that he could handle it as he pleased, that he could take the lease with him or mail it to the bank. Lanier testified that he offered her $50 an acre and that she agreed to take it. On cross examination, Lanier testified that the only condition to the payment of the $8500 was satisfactory title. He testified further that he had agreed to pay her $8500; that when he left he considered that Magnolia owed her that sum if the title was good. Lanier testified that it was agreed that he would take the lease directly to Magnolia, and that Magnolia would pay her $8500 within ten days if the title was found merchantable, and that otherwise it would return the lease. Magnolia approved the title and within the ten-day period tendered the $8500 to Mrs. Sottong. However, on February 4, 1946, within the ten-day period,

---

[1] While the date of this letter in the record is given as August 3, 1946, this apparently is an error, and no doubt August 3, 1945, was meant. This clearly appears from the fact that the new lease was executed on January 30, 1946.

Mrs. Sottong notified the bank that she had withdrawn her offer to lease, and directed it to return the lease. On the same day she also sent a wire to Magnolia, in which she stated, "We retract our offer to lease to you our farm in * * *." She confirmed this wire by letter. Magnolia, however, retained and recorded the lease.

A number of legal propositions are advanced by the parties in support of their respective contentions, which in our opinion are not necessary to be considered or decided, because the entire case turns upon the question whether the transaction constituted an offer to lease which was withdrawn before acceptance, or whether it constituted a binding agreement which obligated Magnolia to pay $8500 within ten days if the title was merchantable.

 Of course the law is well settled that as to contracts generally there can be a conditional delivery, and that the failure of the condition prevents the contract from taking effect. So, also, it may be conceded that whether there has been absolute or conditional delivery of a written contract may be shown by parol evidence. We deem it unnecessary to cite authorities in support of these well established principles. These were questions of fact upon which the decision depended in the court below. The trial court resolved them against appellants' contentions. It found that Mrs. Sottong's offer to take $50 per acre for the lease was accepted by Magnolia, subject only to approval of title; that a written lease was prepared and delivered to Magnolia; and that Magnolia tendered payment within the ten-day period.

We have not set out Mrs. Sottong's evidence in detail, because our function is limited to a scrutiny of the evidence which is urged in support of the court's findings. Concerning her testimony it is sufficient to say that, considered in its entirety, it does not materially contradict the testimony of Lanier. Thus, she admitted telling Lanier that in her estimation this was more money than she thought she would ever get, and that she was delighted to get that amount of money; her son, John, testified that his mother said that that was more money than she ever expected to see, and that she "was awfully glad about it." Thus her own evidence supports the conclusion that she was of the opinion that as a result of the negotiations she would receive $8500 from Magnolia. This implies more than a mere continuing offer on her part which was subject to acceptance or rejection.

Finally, appellants contend that Lanier's authority to buy the lease as the agent of Magnolia was required to be in writing to take the contract out of the statute of frauds. Woodworth v. Franklin, 85 Okl. 27, 204 P. 452, 27 A.L.R. 590, by the Oklahoma Supreme Court, is cited in support of this proposition. That case does not support appellants' position. There the agent of the owner of the land executed the oil and gas lease and the court correctly held that his authority to execute an oil and gas lease must be in writing. It was not necessary for Lanier's authority to offer to buy the lease to be in writing. When his offer was accepted and a valid written lease was executed and delivered, an enforceable contract resulted.

The findings of the trial court are supported by substantial evidence and the judgment is therefore affirmed.